**UNITED STATES of America,
Plaintiff,**

**v.**

**Franklin Dale GOINGS and Seth Peter
Bad Cob, Defendants.**

**Magistrate's Docket No. 600.**

United States District Court,
D. North Dakota,
Southwestern Division.

Jan. 16, 1974.

David L. Peterson, Asst. U. S. Atty., Bismark, N. D., for plaintiff.

William C. Kelsch, Mandan, N. D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This is an assault case wherein jurisdiction is predicated on 18 U.S.C. 113(c) (. . . within the special . . . territorial jurisdiction of the United States . . .). The alleged incident occurred at the United Tribes Employment Training Center, located on the site of Fort Lincoln. For a plat of the tract involved see the plat attached hereto.

Up through May 24, 1973, the United States of America had exclusive jurisdiction of this tract [United States v. Redstone, 488 F.2d 300, opinion dated December 3, 1973 (8th Cir.)]. On that date the United States of America exe-

cuted an instrument entitled "Quitclaim Deed". The grantee of the deed is "United Tribes of North Dakota Development Corporation", a non-profit corporation, organized under the laws of the State of North Dakota. Defendants claim this deed terminated the jurisdiction of the United States because the land is no longer within the special territorial jurisdiction of the United States.

Since the language of the deed is going to be determinative of the issues, it is set out in full.

## QUITCLAIM DEED

This Indenture, made as of the 24th day of May, 1973,

### between the

UNITED STATES OF AMERICA, acting by the Secretary of Health, Education and Welfare, hereinafter called the Secretary, through the Regional Director of Region VIII of the Department of Health, Education and Welfare, hereinafter called the Department, under and pursuant to the power and authority contained in the Federal Property and Administrative Services Act of 1949, Public Law 81–152, as amended, hereinafter called the Act, the Civil Rights Act of 1964, Public Law 88–352, and the National Environmental Policy Act of 1969, Public Law 91–190, and regulations promulgated thereunder, GRANTOR,

### and

UNITED TRIBES OF NORTH DAKOTA DEVELOPMENT CORPORATION, a nonprofit corporation organized under the laws of the State of North Dakota, whose post-office address is 3315 South Airport Road, Bismarck, in the County of Burleigh and State of North Dakota, acting by its Chairman and Center Director, GRANTEE.

### WITNESSETH:

WHEREAS, the GRANTOR is the owner of certain real property in the County of Burleigh and State of North Dakota, hereinafter called the property and more fully described below; and

WHEREAS, the property has been declared surplus to the needs of the GRANTOR; and

WHEREAS, by letter dated April 11, 1973, the Regional Administrator of General Services, acting under the authority contained in the Act and a proper delegation of authority from the Administrator of General Services, did assign the property to the Secretary for disposal, upon the Secretary's recommendation that the property is needed for educational purposes in accordance with the provisions of the Act; and

WHEREAS, the GRANTEE made application dated March 2, 1973, under the provisions of the Act, to purchase the property for educational use with a public benefit allowance of one hundred percent (100%) of the fair market value thereof; and

WHEREAS, the fair market value of the property as of the date of this quitclaim deed is three million, three hundred eighty-seven thousand dollars ($3,387,000.00); and

WHEREAS, the Secretary has accepted the application of the GRANTEE to purchase the property for educational use; and

WHEREAS, the Administrator of General Services has advised in the letter of April 11, 1973, that no objection will be interposed to the transfer of the property to the GRANTEE for educational purposes as permitted under the terms of the Act.

NOW, THEREFORE, the GRANTOR, for and in consideration of the public benefits to be derived from utilization of the property for educational purposes by the GRANTEE in accordance with the plan contained in the GRANTEE'S application, and the promise of the GRANTEE faithfully to observe and perform the conditions, covenants, reservations and restrictions hereinafter set forth, and other good and valuable consideration, receipt of which is hereby acknowledged, does hereby GRANT, QUITCLAIM, RELEASE and REMISE unto the GRANTEE, its successors and

assigns forever, all such interest, right and title as the GRANTOR has in and to the following-described property, reserving and excepting such right, title and interest to the GRANTOR as may be hereinafter expressed, situate, lying and being in the County of Burleigh, State of North Dakota (aggregating 105 acres, more or less), to wit:

A tract of land situated in the southeast quarter of Section 15, Township 138 North, Range 80 West of the 5th P.M., Burleigh County, North Dakota, more particularly described as follows: Beginning at the Southeast corner of the aforesaid SE¼ thence north along east line of said SE¼ for a distance of 1397.66 feet; thence west parallel with the south line of said SE¼ to the west line thereof; thence south along the west line for a distance of 807.50 feet; thence 93° 30′ to the left for a distance of 277.00 feet; thence 47° 00′ to the right approximately 400 feet to the intersection of the centerline of Beaver Road; thence southerly along centerline extended to the south line of said SE¼; thence east along said south line to the point of beginning.

Also the NE¼ SE¼ SW¼ of Section 23, Township 138 North, Range 80 West of the 5th P.M.

Excepting therefrom the following described parcels: (1) the area transferred to General Services Administration for a motor pool facility: A parcel bounded on the west by the west side of Marne Road, on the east by the east boundary of Fort Lincoln, on the north by a line which is the extension of the north line of Sheridan Avenue, and on the south by the south boundary of Fort Lincoln; and (2) the area conveyed to Burleigh County, North Dakota: Commencing at a point 580 feet east of the southwest corner of the SE¼ of Section 15, thence north 33 feet, thence east 970 feet; thence north 12 feet, thence west 970 feet; thence south to the place of beginning.

EXCEPTING and RESERVING in the GRANTOR all right, title and ownership interests in and to any and all coal, oil, gas and other fossil fuels as well as precious and semiprecious stones, metals and other minerals being, lying on, within or beneath said property and the right to enter upon the property to exploit, separate, remove and dispose of the same, including rights of reasonable access and egress;

ALL SUBJECT to existing easements, exceptions, interests, liens, rights-of-way, licenses and permits, including those for roads, highways, railways, pipe lines, and sewers, for power, telephone, gas, and water lines, and for any other public and private utilities.

TOGETHER WITH, all and singular, the appurtenances, hereditaments, improvements and tenements thereunto belonging or in anywise appertaining, whether in, on or under said property, and the reversion and reversions, remainder and remainders, issues, profits and rent thereof, except as hereinafter otherwise expressly provided;

TO HAVE AND TO HOLD the property unto the GRANTEE and its successors and assigns forever, PROVIDED, that this deed is made and accepted upon each of the following conditions subsequent, which shall be binding upon and enforceable against the GRANTEE, its successors or assigns, and each of them, as follows:

1. That for a period of thirty (30) years from the date of this deed the property herein conveyed shall be utilized continuously for educational purposes in accordance with the proposed program and plan set forth in the application of the GRANTEE and for no other purpose.

2. That during the aforesaid period of thirty (30) years, the GRANTEE will encumber, hypothecate, lease, mortgage, resell or otherwise dispose of the property, or any part thereof or interest

therein, only as the Secretary or his successor in function, in accordance with applicable law and regulations, may authorize in writing.

3. That one year from the date of this deed and annually thereafter for the aforesaid period of thirty (30) years, unless the Secretary or his successor in function otherwise directs, the GRANTEE will file with the Secretary or his successor in function reports on the operation and maintenance of the property and will furnish, as requested, other pertinent data evidencing continuous use of the property herein conveyed for the purposes specified in the aforesaid application of the GRANTEE.

4. That for the period during which the property is used for a purpose for which Federal financial assistance is extended by the Department or for another purpose involving the provision of similar services or benefits, the GRANTEE hereby agrees that it will comply with the provisions of Title VI of the Civil Rights Act of 1964, Public Law 88–352, and all requirements imposed by or pursuant to the regulations of the Department, 45 Code of Federal Regulations, Part 80, issued pursuant to that Title and as in effect on the date of this deed, to the end that, in accordance with the aforesaid Title VI and the aforesaid regulations, no person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under the program and plan referred to in condition 1 above or under any other program or activity of the GRANTEE, its successors or assigns, to which such Act and regulations apply by reason of this conveyance.

5. That the GRANTEE, by the acceptance of this deed, covenants and agrees for itself, its successors and assigns, that for the period during which the property is used for a purpose for which Federal financial assistance is extended by the Department or for another purpose involving the provision of similar services or benefits, that it will comply with the provisions of the National Environmental Policy Act of 1969, Public Law 91–190, and all requirements imposed by or pursuant to any Federal regulations issued thereunder. All plans for construction, alterations, landscaping or disposition of any kind of or on the within-conveyed property shall be submitted to the Secretary of the Department of Health, Education, and Welfare for review, necessary revision and/or approval as to compliance with the National Environmental Policy Act of 1969 prior to commencement of such construction, alteration, landscaping or disposition.

In the event of a breach of any of the conditions set forth above, whether caused by the legal or other inability of the GRANTEE, its successors or assigns to perform any of the obligations herein set forth, and the failure or refusal of the said GRANTEE to remedy such breach or to comply with the said conditions within ninety (90) days after receipt of written notice from the Secretary or his successor in function of such default or noncompliance, then, and in such event, all right, title and interest in and to the property conveyed by this instrument shall, at the option of the GRANTOR, revert to and become the property of the GRANTOR, which, in addition to all other remedies for such breach, shall have an immediate right of entry thereon, and the GRANTEE and its successors and assigns shall forfeit all interest, right and title in and to the property and in any and all of the appurtenances, hereditaments and tenements thereunto belonging, PROVIDED, HOWEVER, that the failure of the Secretary or his successor in function to insist in any one or more instances upon complete performance of any of the said conditions shall not be construed as a waiver or a relinquishment of the future performance of any such conditions but the obligations of the GRANTEE, its successors and assigns with respect to such future performance shall continue in full force and effect; PROVIDED, FURTHER, that in the event that

the GRANTOR fails to exercise its option to re-enter the premises for any such breach of conditions subsequent numbered 1, 2, 3 and 5 herein within thirty-one (31) years from the date of this conveyance, the conditions numbered 1, 2, 3 and 5 herein, together with all of the rights of the GRANTOR to re-enter as in this paragraph provided with respect to conditions numbered 1, 2, 3 and 5 herein, shall, as of that date, terminate and be extinguished; PROVIDED, FURTHER, that the expirations of conditions numbered 1, 2, 3 and 5 above and the rights to re-enter shall not affect the obligation of the GRANTEE, its successors or assigns with respect to condition numbered 4 herein or the right reserved to the GRANTOR to re-enter for breach of said condition.

The GRANTEE, by the acceptance of this deed, covenants and agrees for itself, its successors and assigns and for every successor in interest to the property herein conveyed or any part thereof —which covenant shall attach to and run with the land for so long as the property herein conveyed is used for a purpose for which Federal financial assistance is extended by the Department or for another purpose involving the provision of similar services or benefits and which covenant shall in any event, and without regard to technical classification or designation, legal or otherwise, be binding to the fullest extent permitted by law and equity for the benefit and in favor of and enforceable by the GRANTOR, its successors and assigns against the GRANTEE, its successors and assigns and every successor in interest to the property, or any part thereof—that it and they will comply with Title VI of the Civil Rights Act of 1964, Public Law 88–352, and all requirements imposed by or pursuant to the regulations of the Department, 45 Code of Federal Regulations, Part 80, issued pursuant to that Title and as in effect on the date of this deed, to the end that, in accordance with Title VI of the Civil Rights Act of 1964 and the regulations, no person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under the program and plan referred to in condition 1 above or under any other program or activity of the GRANTEE, its successors or assigns to which the Civil Rights Act of 1964 and regulations apply by reason of this conveyance.

The GRANTEE by the acceptance of this deed, further covenants and agrees for itself, its successors and assigns, that, in the event that the property conveyed hereby is sold, leased, mortgaged, encumbered or otherwise disposed of or is used for purposes other than those set forth in the above-identified application without the consent of the Department, all revenues or the reasonable value, as determined by the Department, of benefits to the GRANTEE or its assigns or to any other person or corporation, deriving directly or indirectly from such sale, lease, mortgage, encumbrance, disposal or use (or the reasonable value as determined by the Department of any other unauthorized use) shall be considered to have been received and held in trust by the GRANTEE for the GRANTOR and shall be subject to direction, control, and disposition by the Department.

The GRANTEE, by the acceptance of this deed, further covenants and agrees for itself, its successors and assigns, and for every successor in interest to the property herein conveyed or any part thereof, which covenant shall attach to and run with the land, that it and they will permit and will not interfere with the provision, through existing utility pipes and lines or such additions thereto and replacements thereof as may reasonably be necessary, of water, gas, electric or other utility services to the following parcels, to wit:

a parcel in Burleigh County, North Dakota, bounded on the west by the

west side of Marne Road, on the east by the east boundary of Fort Lincoln, on the north by a line which is the extension of the north line of Sheridan Avenue, and on the south by the south boundary of Fort Lincoln; and

a parcel described as follows: Commencing at a point 580 feet east of the southwest corner of the southeast quarter of Section 15, Township 138 North, Range 80 West of the 5th P. M., Burleigh County, North Dakota, thence north 33 feet, thence east 970 feet; thence north 12 feet, thence west 970 feet, thence south to the place of beginning; and

any other parcels presently receiving or which may hereafter receive utility services through existing utility pipes and lines on the property herein conveyed;

provided, however, that by the acceptance of this deed the GRANTEE, its successors and assigns, and successors in interest to the property herein conveyed, shall not be required to pay the cost of any utility services provided to the aforesaid parcels.

The GRANTEE, by the acceptance of this deed, covenants and agrees for itself, and its successors and assigns, that in the event the GRANTOR exercises its option to revert all right, title and interest in the property to the GRANTOR, then the GRANTEE shall provide protection and maintenance of said property at all times until such time as the title is actually reverted to GRANTOR, including the period of any notice of intent to revert. Such protection and maintenance shall, at a minimum, conform to the standards prescribed by the General Services Administration in its regulations FPMR 101–47.4913 (41 CFR 101–47.4913) in effect as of the date of this deed.

In the event that title to the property is reverted to the GRANTOR for noncompliance or voluntarily reconveyed in lieu of reverter the GRANTEE shall, at the option of the Secretary or his successor in function, be responsible for and shall be required to reimburse the GRANTOR for the decreased value of the property not the result of reasonable wear and tear, acts of God and alterations and conversions made by the GRANTEE to adapt the property to the uses for which the property was acquired. The GRANTOR shall in addition thereto be reimbursed for such damages, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of the noncompliance.

The GRANTEE may secure abrogation of the conditions subsequent numbered 1, 2, 3 and 5 herein by:

a. Obtaining the consent of the Department of Health, Education, and Welfare, or its successor in function; and

b. Payment to the United States of America in accordance with the following conditions:

(i) If abrogation is requested by the GRANTEE for the purpose of making the property or a portion thereof available to serve the needs or purposes of a third party, payment shall be based upon the current fair market value of the conveyed property, as of the date of request for abrogation, less amortized credit at the rate of three and one-third percent ($3\frac{1}{3}\%$) of the public benefit allowance granted on the original sale price of the property for each twelve (12) months during which the property has been utilized (as determined by the GRANTOR) in accordance with the purpose specified in the above entitled application of the GRANTEE.

(ii) If abrogation is requested by the GRANTEE for the purpose of making the property available as security for financing new construction, for acquiring substitute or better facilities, or for relocating elsewhere, all for the purpose of further advancing or promoting the program specified in the above-entitled application of the

GRANTEE, payment shall be based upon the original sale price of three million, three hundred eighty-seven thousand dollars ($3,387,000.00) as of the date of this instrument, less amortized credit at the rate of three and one-third percent (3⅓%) of the public benefit allowance granted for each twelve (12) months during which the purpose specified in the above-identified application; PROVIDED, HOWEVER, that the GRANTEE shall execute an agreement, supported by such surety bond or other security as may be deemed by the Department to be necessary or advisable, to assure that the proceeds of sale obtained by the GRANTEE in any disposal of any portion of the property for effectuating one or another of the aforesaid purposes for which abrogation is requested, will be devoted to the program use specified in the above-identified application.

The GRANTEE, by acceptance of this deed, further covenants and agrees for itself, its successors and assigns, that the GRANTOR shall have the right, during any period of emergency declared by the President of the United States or by the Congress of the United States, to the full and unrestricted control, possession and use of the property hereby conveyed or of any portion thereof, including any additions or improvements thereto made subsequent to this conveyance. Prior to the expiration or termination of the period of restricted use by the GRANTEE, such use may be either exclusive or non-exclusive and shall not impose any obligation upon the GRANTOR to pay rent or any other fees or charges during the period of emergency, except that the GRANTOR shall (i) bear the cost of maintenance of such portion of the property used by it exclusively or over which it may have exclusive possession or control, (ii) pay the fair share, commensurate with the use, of the cost of maintenance of such of the property as it may use nonexclusively or over which it may

have nonexclusive possession or control, (iii) pay a fair rent for the use of improvements or additions to the property made by the GRANTEE without Governmental aid, and (iv) be responsible for any damage to the property caused by its use, reasonable wear and tear and acts of God and the common enemy excepted. Subsequent to the expiration or termination of the period of restricted use, the obligation of the GRANTOR shall be as set forth in the preceding sentence and in addition, the GRANTOR shall be obligated to pay a fair rent for all or any portion of the conveyed premises which it uses.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed as of the day and year first above written.

UNITED STATES OF AMERICA, GRANTOR,
Acting by and through the Secretary of Health, Education, and Welfare

By_____
Regional Director for Region VIII of the Department of Health, Education, and Welfare

ACKNOWLEDGEMENT
ACCEPTANCE

The GRANTEE, acting by and through its Chairman and Center Director, hereby accepts this quitclaim deed for itself, its successors and assigns, subject to all of the covenants, conditions, reservations, restrictions and terms contained therein.

IN WITNESS WHEREOF, GRANTEE has caused these presents to be executed by its Chairman and by its Center Director.

UNITED TRIBES OF NORTH DAKOTA DEVELOPMENT CORPORATION

By _____
Chairman

By _____
Center Director

## ACKNOWLEDGEMENT

■ In consideration of the problem, I should not be inhibited by any nomenclature but should seek to interpret the instrument by reference to the actual meaning and effect of the language used.

The problem is whether, despite the language of the deed, the lands transferred to the North Dakota corporation are still subject to the "special jurisdiction" of 18 U.S.C. 113, as that "special jurisdiction" is defined in 18 U.S.C. 7(3) ; i. e., are these lands:

. . . reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or . . .

acquired by the United States with the consent of the legislature of the State in which the same shall be, for the erection of a fort . . . or other needful building.

The lands were previously acquired for the use of, and under the jurisdiction of, the United States when they were bought on June 18, 1898, by Warranty Deed from Thomas Mellon and Sarah J. Mellon. Clearly the Legislature of the State of North Dakota has consented to the use of the land by the United States, [1895 N.D.S.L. Chapter 81; 54–01–08 NDCC].

■ Has the United States reserved the land for the use of the United States? If the deed left in the United States a reserved interest for the use of the United States, then, under 18 U.S.C. 7(3), this Court has special territorial jurisdiction. If not, then this Court does not have special territorial jurisdiction. Or, in the jargon of real property law, if under this deed, the United States transferred the land upon a *condition subsequent* as defined in Restatement of Property, § 24, where the United States was required to take an affirmative step to retake the land, or interest conveyed, then the deed left in the United States only a chose-in-action, a reserved power of termination [Restatement of Property, § 155], but no reserved interest in the land.

If the deed contained a special limitation as defined in Restatement of Property, § 23, and a possibility of reverter, [Restatement of Property, § 154], conditioned upon the happening of certain events, then the United States did reserve an interest in the land upon which a special territorial jurisdiction could be predicated.

For a discussion of these concepts see 28 Am.Jur.2d .Estates, § 142; Fraser, Cases and Readings on Property, note at p. 199, Restatement of Property, Chapter 4, Estates in Fee Simple Defeasible.

North Dakota law encompasses the concepts of, and allows the creation of an estate in fee simple subject to a condition subsequent. It also allows the creation of a fee simple determinable. [47–02–22 NDCC and Restatement of Property, § 44 and § 45. Also see 47–02–23 NDCC. The statute uses language describing a fee simple subject to a condition subsequent as also describing a fee simple determinable.]

■■ Because the law abhors a forfeiture, the language effecting defeasance in a deed must clearly spell that fact out. [Restatement of Property, § 44 *l*, m. n; and § 45 i, k, o and p]. The language in a deed will not be interpreted to create a defeasible fee and a possibility of reverter or a reserved power of termination unless the possibility of reverter or the reserved power of termination is expressly stated in the deed.

■ The habendum clause grants "to have and to hold forever" provided "that this deed is made upon the, following condition subsequent which shall be binding upon and enforceable against the grantor . . .."

Then after reciting conditions against:

1. Uses for other than educational purposes in the first 30 years,

2. Incumbrance in the first 30 years,

3. The failure to file annual reports of use,

4. Non compliance with the Civil Rights Act,

5. Non compliance with the National Environmental Policy Act,

the deed recites that the property shall, *at the option of the grantor,* revert. Then the deed recites "if the grantor shall fail to exercise its option to reenter . . . ." the reserved power of termination will lapse.

Finally, the grantee recognizes a continuing right in the grantor to utilize the premises during any state of emergency. However, this would only appear to be a declaration of procedure to facilitate the government's pre-existent power of eminent domain.

The reddendum clause reserves to the grantor a broad group of minerals, but this reservation is in no way inconsistent with a mere proprietary interest in the land.

Here, by its deed, the government has divested itself of these lands which it had previously acquired for the use of the United States, and has terminated its special jurisdiction over that land.

Therefore, it is ordered, That the complaints issued against Franklin Dale Goings and Seth Peter Bad Cob are dismissed. Counsel shall prepare Judgment in conformance with this Order.