### In re ALODEX CORPORATION SECURITIES LITIGATION.
#### M.D.L. No. 165.

United States District Court,
S. D. Iowa, C. D.
April 3, 1975.

L. R. Voigts, W. Don Brittin, Jr., Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, Iowa, for Marlin Cole.

Lawrence C. Brown, Faegre & Benson, Minneapolis, Minn., for Northwest Growth Fund, Inc.

Marvin J. Klass, Theodore M. Whicher, Robert D. Mishne, Stewart, Hatfield, Klass & Whicher, Sioux City, Iowa, for Constance N. Belin and others.

Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, Iowa, for David W. Belin.

Timothy J. Walker, John C. Eddy, Merrick Scott Rayle, Kermit Sutton, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Iowa, Edward J. Schwartzbauer, William J. Keppel, Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., John D. Martin, Jr., David C. Porteous, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for Alodex Corporation; Kemmons Wilson and Wallace E. Johnson.

Charles F. Wasker, Michael P. Joynt, Wasker, Sullivan, Wheatcraft & Ward, Des Moines, Iowa (R. Steven Johnson, Des Moines Iowa), Roger A. Johnson, Johnson, Thompson, Klaverkamp & James, P.A., Minneapolis, Minn., James E. Tolan, Peter Aron, Olwine, Connelly, Chase, O'Donnell & Weyher, New York, City, for Harris, Kerr, Forster & Company.

## ORDER RE: MOTIONS TO DISMISS OF HARRIS, KERR, FORSTER AND COMPANY AND THE ALODEX DEFENDANTS IN THE COLE AND BELIN CASES

HANSON, Chief Judge.

The Court addresses this Order to statute of limitations issues raised by way of motions to dismiss filed by defendants Harr, Kerr, Forster and Company (Harris, Kerr) and defendants Kemmons Wilson, Wallace Johnson and the Alodex Corporation (the Alodex defendants). These defendants raise three related grounds: (1) That the period applicable to the Cole and Belin lawsuits is the two-year provision of the Iowa Blue Sky Statute, § 502.23, Code of Iowa (1973); (2) That the two-year period bars these claims, notwithstanding the federal tolling doctrine; (3) That the doctrine of estoppel is similarly unavailing to these plaintiffs.

## THE APPLICABLE STATUTE OF LIMITATIONS

█ Federal jurisdiction in both the Belin and Cole cases is founded upon claims under Section 10 of the Securities Exchange Act of 1934. Because the 1934 Act contains no statute of limitations governing 10b–5 claims, the appropriate limitations period of the forum state is applied. United Auto Workers v. Hossier Cardinal Corp., 383 U.S. 696, 704–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Vanderboom v. Sexton, 422 F. 2d 1233, 1236–37 (8th Cir. 1970). As the Eighth Circuit Court of Appeals has noted, "The basic standard for determining which of the various local periods of limitation to utilize is that it should be 'one which best effectuates the federal policy at issue.'" Vanderboom, supra, at 1237.

Vanderboom dictates the method by which this Court must determine which Iowa statute of limitations to apply, and a review of that decision will be helpful here. In Vanderboom the Eighth Circuit determined that "it is appropriate to look to the local statute which bears the closest resemblance to the federal statute involved." Id. 1237 (emphasis added). The Court compared a federal 10b–5 action with an action for fraud in Arkansas, and with an action under the Arkansas Securities Act. In doing so, the role of scienter in each of those three causes of action played a major role. The Court noted that the Eighth Circuit had previously adopted a rule applying Rule 10b–5 to "negligent as well as intentional misrepresentations." See Myzel v. Fields, 386 F.2d 718, 734–35 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Thus, proof of scienter was not an element of recovery in a 10b–5 action. The Court then determined that an action under the Arkansas Securities Act similarly lacked a scienter requirement; recovery for Arkansas fraud, however, required proof of scienter. To the Court, this comparison revealed a similar lack of defenses which rendered a 10b–5 action more like an Arkansas blue sky action than an Arkansas fraud suit. The Court also noted that the state and federal securities actions shared a "commonality of purpose;" both dealt "expressly with the sale of securities." Un-

der these dual criteria, the Court applied the two-year limitations statute of the Arkansas Securities Act to the pending 10b–5 action, rather than the three-year period for Arkansas fraud actions.

At the time of its decision, the *Vanderboom* court noted that, to the best of its knowledge, no prior federal court had "applied a short blue-sky statute of limitations" to a 10b–5 case. 422 F.2d at 1237. Since that case, however, a number of courts have used *Vanderboom's* resemblance analysis, and reached a similar result. *See, e.g.,* Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972); Hudak v. Economic Research Analysts, Inc., 499 F.2d 996 (5th Cir. 1974); Maine v. Leonard, 353 F. Supp. 968 (W.D.Va.1973). Thus, it is quite clear to this Court that the *Vanderboom* approach has gained a notable following, and certainly must be adhered to in this case.

The parties to this litigation do not directly challenge the propriety of this Court's applying the *Vanderboom* test. Rather, they quarrel over the result which an application of that test will yield. In a nutshell, plaintiffs contend that actions for fraud in Iowa more closely resemble 10b–5 actions than do actions under the Iowa Securities Act. Thus, they assert that the five-year limitations period § 614.1(4) of the Code of Iowa (1973), should apply here. Defendants assert that the two-year limitations period of the Iowa Securities Act (§ 502.23 of the Code) applies, since in their view causes of action under that law are more like 10b–5 suits than are common law fraud cases. To resolve this question it will be necessary to compare the pertinent Iowa causes of action in light of *Vanderboom's* two-pronged resemblance test: commonality of purpose and lack of defenses.

The plaintiffs do not seriously challenge defendants' assertions that the purposes of the Iowa and federal securities acts are coterminous. In commenting upon the purposes to be served by the Iowa Securities Law, the Iowa Supreme Court has stated:

It is well known that this state in times past has been flooded with worthless securities, and that there are people who have thus been defrauded. It was the intention of the Legislature in passing this act to avoid this situation. A study of the act shows that securities could not be issued by corporations in this state without first obtaining permission from the secretary of state, and, in order to obtain such permission, written statements provided for in the act were required to be made by the corporation or its officers, sworn to prior to having been filed with the secretary, and it was for the secretary of state to determine, under the showing made, the good faith and financial stability of the corporation thus wishing to issue such securities. As one of the provisions of said act, the above-quoted section of the Code was made to aid the purpose of the act. State v. Dobry, 217 Iowa 858, 860, 250 N.W. 702, 703 (1933).

In Lolkus v. VanderWilt, 258 Iowa 1074, 141 N.W.2d 600 (1966), the Supreme Court noted:

As stated in appellant's brief, "The suppression of fraudulent practices and the protection of the public from their own gullibility are commonly accepted as the primary purposes of Blue Sky Laws". 141 N.W.2d at 603.

It is apparent to this Court that the state and federal securities laws share a specific commonality of purpose which is lacking when common law fraud actions are compared with federal securities claims. The comparison of the three relevant causes of action in terms of their available defenses is not so straightforward, however, and will involve a more detailed evaluation of the various causes of action.

■ Division I of both the Cole and Belin complaints alleges a cause of action under Section 10 of the Securities Ex-

change Act of 1934. That section has been implemented by Rule 10b–5, which states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud.

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

As previously noted, in the Eighth Circuit Rule 10b–5 applies to negligent as well as intentional misrepresentations. Myzel v. Fields, *supra. See also,* Klapmeier v. Peat, Marwick, Mitchell & Co., 363 F.Supp. 1212, 1215 (D.Minn.1973). Thus, "[P]roof of 'scienter,' i. e., knowledge of the falseness of the impression produced by the statements or omissions made, is not required under Section 10(b) of the Act." Myzel, *supra,* 386 F.2d, at 734–35. Accordingly, this Court's premise for comparing Rule 10b–5 with the relevant Iowa actions in terms of lack of defenses is that the federal cause of action has dispensed with scienter. The key inquiry must focus on the role of scienter in Ch. 502 claims and in common law fraud suits.

Numerous Iowa Supreme Court cases have delineated the following as necessary elements of fraud: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) injury and damages. *See* Detrick v. Aetna Casualty & Surety Co., 261 Iowa 1246, 158 N.W.2d 99, 105–06 (1968); Hall v. Wright, 261 Iowa 758, 156 N.W.2d 661, 666 (1968); Ford v. Barcus, 261 Iowa 616, 155 N.W.2d

507, 511 (1968), and cases cited therein. Other cases have held, however, that "recovery may be had for negligent representations in an action for fraudulent representations. Scienter, or a knowledge of the falsity of the representations relied upon, 'under proper circumstances . . . may be implied.'" American Universal Insurance Co. v. Scherfe Insurance Agency, 135 F.Supp. 407, 412 (S.D. Iowa 1954). The parties dispute the significance of this ability to imply scienter in certain situations. The plaintiffs point out that a proper circumstance for such an implication is where "the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation." American Universal Insurance Co., *supra,* 135 F.Supp. at 413, quoting Tott v. Duggan, 199 Iowa 238, 200 N.W. 411 (1925). They assert that this situation is a common one for 10b–5 actions, and hence that it can be concluded that 10b–5 actions and Iowa fraud actions have both dispensed with scienter. The defendants assert that the element of scienter always exists in fraud cases, but concede that the existence of certain relationships between the parties can serve as a means of proving that element.

The defendants' interpretation of the role of scienter in Iowa fraud cases is strongly supported by the approach of the *Vanderboom* opinion. There the court noted that:

. . . the District Court found that under Arkansas law one can recover for common law fraud and deceit only if scienter or intentional misrepresentation is proved. The Court cited a long list of cases including Sledge & Norfleet Co. v. Mann, 193 Ark. 884, 103 S.W.2d 630 (1937) and Croley v. Baker, 237 Ark. 136, 371 S. W.2d 830 (1963). There are a few cases in Arkansas suggesting that recovery can be had for negligent misrepresentations under a theory of "constructive fraud". Lane v. Rachel, 239

Ark. 400, 389 S.W.2d 621 (1965); Stewart v. Clark, 115 S.W.2d 887 (1938). These cases, however, only constitute an exception to the general rule in Arkansas requiring scienter and the exception is applied to those situations where certain acts without scienter constitute constructive fraud as a matter of public policy. Thus, there is a clear distinction between actions proceeding under federal Rule 10b–5 and actions proceeding under the Arkansas law of fraud in that the former is much more favorable to plaintiffs, eliminating several of the defenses available to defendants in a common law fraud action.

422 F.2d at 1239.

This Court deems that the Iowa law of fraud is nearly identical to that of Arkansas. Scienter is uniformly listed by the Iowa Supreme Court as an element of fraud. *See* Wyckoff v. A&J Home Benevolent Ass'n of Creston, 254 Iowa 653, 119 N.W.2d 126 (1962); Lamasters v. Springer, 251 Iowa 69, 99 N.W.2d 300 (1959); and cases cited *supra* for this proposition. The fact that scienter may be implied in certain circumstances does not eliminate it as an element of the general cause of action, as the *Vanderboom* court so determined. Indeed, even in the "exceptional" cases the plaintiff must prove the special circumstances which allow the scienter implication; no such proof is required for a 10b–5 action. Thus, in terms of resemblance by way of lack of defenses, this Court concludes that Iowa fraud actions require scienter, while 10b–5 actions do not.

It must next be determined whether actions under ch. 502 of the Iowa Code require scienter. Section 502.26 of the Iowa Code (1973) reads as follows:

*False statements, entries, and representations*

Any person, firm, association, company, or corporation subject to the provisions of this chapter, that shall subscribe or cause to be made any false statement or false entry in any book required to be kept or relating to any business to be transacted in this state pursuant to the provisions of this chapter, or make or subscribe to any false statement, exhibit or paper filed with the commissioner of insurance, or shall make to the commissioner of insurance, his superintendent, agent or representative any false or fraudulent statement concerning the proposed plan of business to be transacted, or the nature, value or character of securities to be sold in this state, or shall make to said commissioner of insurance, his superintendent, agent or representative any false statement as to the financial condition of such person, firm, association, company, or corporation shall be deemed guilty of a felony, and upon conviction shall be fined in the sum of not more than five thousand dollars, or imprisoned not to exceed five years in the penitentiary or reformatory, or by both such fine and imprisonment in the discretion of the court.

Section 502.28 provides:

*False representations*

Any person, firm, association, company, or corporation, or any agent or representative thereof, whether subject to the provisions of this chapter or otherwise, that sells, offers for sale, or negotiates for the sale of any securities within this state, and knowingly makes any false representations or statements as to the nature, character, or value of such security, or the amount of the earning power of such security whether in the nature of interest, dividends, or otherwise, or knowingly makes any other false or fraudulent representation to any person for the purpose of inducing said person to purchase said security, or conceals any material fact in the advertisement or prospectus of such security for the purpose of defrauding the purchaser, or knowingly violates any of the provisions of this chapter

with intent to defraud, shall be deemed guilty of a felony and upon conviction thereof shall be punished by a fine of not less than five hundred dollars nor more than five thousand dollars or by imprisonment in the penitentiary or reformatory for not more than five years or by both such fine and imprisonment.

While both sections place criminal sanctions on certain conduct, they are incorporated into civil actions by § 502.-23 of the act. That provision reads as follows:

*Remedies*

Every sale or contract for sale in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer, or agent of or for such seller who shall have personally participated in making such sales and at the time knew of such violations shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale; and provided further, that no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within thirty days from the date thereof to accept an offer in writing of the seller to take back the security in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

1. In case such securities consist of interest-bearing obligations at the same rate as provided in such obligations; and

2. In case such securities consist of other than interest-bearing obligations at the rate of six percent per annum; less, in every case, the amount of any income from said securities that may have been received by such purchaser. Code of Iowa (1973).

Section 23 has been interpreted to allow civil actions based on a violation of any of the criminal provisions of the Act. *See* Associated Mfrs. Corp. v. De-Jong, 64 F.2d 64, 67 (8th Cir. 1933); Lolkus v. VanderWilt, 258 Iowa 1074, 141 N.W.2d 600 (1966); Getter v. R. G. Dickinson & Co., 366 F.Supp. 559 (S.D. Iowa 1973). The Court must now determine which of the two sections—502.26 or 502.28—is more nearly the counterpart of 10b–5.

■ In theory, both sections 28 and 26 would be available to a state litigant facing circumstances similar to those confronting plaintiffs here. The record in this case reveals that the "fraudulent" acts upon which plaintiffs premise recovery stem from allegedly "misleading" financial statements. These financials appeared in at least one prospectus. If this lawsuit arose under the Iowa Act, the financials plaintiffs challenge would apparently fall within the filing requirements of § 502.7 (as amended, 1965). Section 26 provides a cause of action to a purchaser where falsity is shown to have occurred in a required filing. Thus, a state challenge comparable to the 10b–5 claim plaintiffs assert here would fall within the purview of § 502.26. Indeed, section 26 has been described as an "anti-fraud provision" of the Iowa Act. Civil Remedies Available To Buyers Under the Iowa Securities Law, 14 Drake L.Rev. 131, 135 (1965). All parties concede that Section 26 requires no proof of scienter, either for a criminal conviction or for a civil suit via Section 23. *See* Lolkus v. VanderWilt, *supra*, 258 Iowa at 604, 141 N.

W.2d 600. Section 26 therefore shares a lack of defenses with Rule 10b–5, and more nearly resembles that action than does an Iowa fraud suit. Accordingly, the blue sky limitations period of two years should apply to this federal action.

Plaintiffs have sought to avoid resort to the blue sky limitations period by arguing that Section 28, rather than Section 26, is the applicable section for resemblance test purposes. The Court simply cannot agree.

Section 28 applies to a defendant who knowingly makes false representations in the course of a securities sale. Its plain language clearly reveals a scienter element. *See discussion in* State v. Dobry, 217 Iowa 858, 250 N.W. 702 (1933). This factor alone distinguishes Section 28 from a 10b–5 action.

For purposes of the resemblance test, this Court will compare the Iowa blue sky statute most like a 10b–5 action to an Iowa action for fraud. The Court has found no reported civil case in which relief was sought solely by way of a Section 28 action (as incorporated

through Section 23). A probable reason for this lack of precedent is that no plaintiff having available the scienter-free vehicle of Section 26 would need to resort to the more stringent proof requirements of Section 28. The latter section would only become relevant where no "false" items were filed under § 502.7. The Court will not speculate on the frequency of such situations; it is sufficient to note that the allegations of this lawsuit do not place it in that category. Section 26 would be available to an Iowa plaintiff suing under these facts. The fact that Section 28 might allow a comparable recovery upon proof of more demanding elements is no justification for utilizing it in the resemblance test. This Court will apply the section that an Iowa plaintiff in a similar situation would resort to—Section 26.[1a]

Section 26 and Rule 10b–5 share a lack of defenses and commonality of purpose which Rule 10b–5 and Iowa fraud cases do not possess. Accordingly, the statute of limitations period of § 502.23 will be applied to this lawsuit.[1b]

---

[1a.] Even if the Court were to determine that § 502.28 is more like Rule 10b–5 than is § 502.26, the limitation period of § 502.23 would still apply. If Section 28 were used in the resemblance test, the "defenses" under the state fraud and securities actions would be substantially the same—scienter would apply to both. Section 502.28 and 10b–5 would share a more identical purpose, however.

[1b.] Numerous federal district courts have come to a conclusion similar to that reached by the Court today. The following cases have applied state blue sky statutes of limitations after utilizing the *Vanderboom* approach: Hitchock v. deBruyne, 377 F.Supp. 1403 (D.Conn.1974); Kramer v. Loewi & Co., 357 F.Supp. 83 (E.D.Wis.1973); Corey v. Bache & Co., 355 F.Supp. 1123 (S.D.W. Va.1973); Maine v. Leonard, 353 F.Supp. 968 (W.D.Va.1973); Josef's of Palm Beach, Inc. v. Southern Investment Co., 349 F. Supp. 1057 (S.D.Fla.1972); Richardson v. Salinas, 336 F.Supp. 997 (N.D.Tex.1972). As previously noted in this opinion, the Seventh and Fifth Circuits have also upheld the application of a state blue sky limitations period. *See* Hudak v. Economic Research

Analysts, Inc., *supra,* and Parrent v. Midwest Rug Mills, Inc., *supra.*

Those cases which have applied state fraud limitations periods are clearly distinguishable on their facts. In Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967), it was noted that "[a]lthough in some cases the local Blue Sky Law might be the more appropriate point of reference, in the present case the Michigan law contains no provision similar to section 10(b) of the federal law." 372 F.2d at 100. In Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir. 1971), the Court noted that *Vanderboom* "is principally distinguishable because that circuit has abrogated any semblance of scienter in a private 10b–5 damage action. Not having accomplished that same rationale in this circuit, we will adhere to earlier decisions applying fraud statutes of limitations." 446 F.2d at 104. The role of scienter was similarly controlling in Klapmeier v. Peat, Marwick, Mitchell & Co., 363 F.Supp. 1212 (D.Minn. 1973). There Judge Neville noted that "the Minnesota Securities Act does not contain a substantive provision which is close to the Eighth Circuit definition of Rule 10b–5 . . . .. Moreover, the major reason why the *Vanderboom* court rejected the Arkansas

Having determined that the state Blue Sky statute of limitations applies to the instant case, the relevance of a recent amendment to that provision must now be considered. In a law which took effect on May 2, 1974, § 502.23 was amended, and its two-year limitations period was lengthened to five years. (See 1974 Iowa Legislative Service Pamphlet, at 177–82.) The plaintiffs assert that the five-year period applies to their actions, which were commenced prior to the amendment's passage. The Court has studied the parties' briefs on this issue, and concludes that the recent amendment is of no avail to the plaintiffs.

The pertinent case on this issue is the United States Supreme Court's ruling in William Danzer Co. v. Gulf R.R., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925). That decision involved a cause of action based upon the Interstate Commerce Act. The Act prescribed certain conditions of liability, and contained a two-year limitations period for the filing of complaints. At the time plaintiff's suit was brought, the "period of federal control" could not be considered for purposes of the two-year limitations calculations. Under this construction, plaintiff's claim expired before the complaint was filed. A subsequent amendment, however, revised the computation method to allow plaintiffs to consider periods of "federal control" as being outside the limitations period. The issue before the Supreme Court was whether this change in the law could be applied retroactively to revive plaintiff's claim, for his complaint was timely if the "federal control" period was taken into consideration. To resolve the issue, the Court made the following analysis:

We need not re-examine the doctrine of Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 as it is plain that case does not apply. That was an action on a contract for the recovery of money. By a state statute of limitations the right of action had been barred. The statute was repealed before the action was commenced. It was held that the action could be maintained, and that such repeal did not deprive the debtor of his property without due process of law in violation of the Fourteenth Amendment. The decision rests on the conception that the obligation of the debtor to pay was not destroyed by lapse of time, and that the statute of limitations related to the remedy only, and that the removal of the bar was not unconstitutional. The opinion distinguishes the case from suits to recover real and personal property. That case belonged to the class where statutory provisions fixing the time within which suits must be brought to enforce an existing cause of action are held to apply to the remedy only. But such provisions sometimes constitute a part of the definition of a cause of action created by the same or another provision, and operate as a limitation upon liability. Such, for example, are statutory causes of action for death by wrongful act (The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358); and those arising under the Federal Employers' Liability Act . . . .. This case belongs to the latter class. Section 206(f) will not be construed retroactively to create liability. To give it that effect would be to deprive defendant of its property without due process of law in contravention of the Fifth Amendment. 268 U.S. at 636–37, 45 S.Ct. [612], 613 (Citations omitted.)

The Supreme Court had occasion to comment upon *Danzer* in the case of Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). There the Court noted:

In the *Danzer* case it was held that where a statute in creating a liability

---

fraud limitations statute was that Arkansas required scienter in fraud cases and the Eighth Circuit has eliminated this element from 10b–5 cases. Similarly, Minnesota does not require scienter in fraud cases." 363 F.Supp. at 1215.

also put a period to its existence, a retroactive extension of the period after its expiration amounted to a taking of property without due process of law. Read with the *Danzer* case, Davis v. Mills [194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067] stands for the proposition that the result may be the same if the period of limitation is prescribed by a different statute if it "was directed to the newly created liability so specifically as to warrant saying that it qualified the right." 194 U.S. 454, 24 S.Ct. [692], 694, 48 L.Ed. 1067. But the situation here plainly does not parallel that in the *Danzer* case, and the state court whose province it is to construe state legislation has found no parallel to the *Davis* case. At the time this action was commenced the Blue Sky Law of Minnesota had imposed on appellant a duty; it had not explicitly created a liability. The liability was implied by the state's common law; the period of limitation was found only in the general statute of limitations enacted many years earlier. The state court concluded that the challenged statute did not confer on appellees a new right or subject appellant to a new liability. It considered that the effect of the legislation was merely to reinstate a lapsed remedy, that appellant had acquired no vested right to immunity from a remedy for its wrong in selling unregistered securities, and that reinstatement of the remedy by the state legislature did not infringe any federal right under the Fourteenth Amendment, as expounded by this Court in Campbell v. Holt. *Id.* at 312 n. 8, 65 S.Ct. at 1141.

It is the conclusion of this Court that the principles of *Danzer* govern the instant case. The Iowa Blue Sky Law creates a liability and prescribes a specific period of time for its existence. To apply the 1974 amendment retroactively would operate to deprive defendants of due process of law. Therefore, the two-year period is the one relevant to plaintiff's claims.

### THE FEDERAL TOLLING DOCTRINE

The transaction which forms the basis of the *Cole* and *Belin* lawsuits was consummated on April 29, 1969. On that date the plaintiffs, and others, entered into a written agreement with the Alodex Corporation (at that time Allied Mortgage & Development Company, Inc.). The upshot of this agreement was that plaintiffs would exchange certain stocks they held in Iowa corporations for stocks in the Alodex Corporation. The Alodex Corporation experienced subsequent difficulties, and plaintiffs brought these 10b–5 suits alleging that certain material facts regarding Alodex's financial status were misrepresented or concealed in April of 1969.[2]

The *Cole* lawsuit was filed over four years after the parties' 1969 agreement, on October 31, 1973. The *Belin* complaint was filed a few months later, on January 17, 1974. Computing the two-year limitations period of § 502.23 from these dates alone, the suits are clearly time-barred. Plaintiffs assert, however, that the federal tolling doctrine renders their suits timely.

This Court has previously recognized the principle that in Rule 10b–5 actions the "statute of limitations runs 'only from the date of the discovery of the fraud or from the date the fraud upon reasonable inquiry should have been discovered.'" Lamb v. United Security Life Company, 59 F.R.D. 44, 47 (S.D. Iowa 1973), quoting Vanderboom v. Sexton, 422 F.2d 1233, 1240 (8th Cir. 1970). While this Court further recognized that "the statute of limitations is an affirma-

---

2. The sole claim for federal securities act relief in each case is founded on § 10 of the 1934 Act. The *Belin* complaint is in two counts, and includes a breach of warranty claim premised on the 1969 agreement. The *Cole* complaint raises three theories of recovery: § 10, breach of warranty, and common law misrepresentation.

tive defense under Rule 8(c) and is normally a question for the jury," the record in this case is sufficiently clear at this time to allow a ruling on this issue. *See generally,* Hupp v. Gray, 500 F.2d 993, 995 (7th Cir. 1974); Klein v. Bower, 421 F.2d 338, 343 (2d Cir. 1970); Brictson v. Woodrough, 164 F.2d 107 (8th Cir. 1947).

█ The Court has carefully reviewed depositions and affidavits of the plaintiffs which have been submitted on this issue, and finds that both plaintiffs discovered or should have discovered the "fraudulent" financial information on which they base their claims well in advance of two years prior to filing suit. Accordingly, the federal tolling doctrine cannot render these claims timely.

The following facts are undisputed, and make the inapplicability of the tolling doctrine inescapable. Plaintiffs entered into the agreement regarding an exchange of stock with Alodex on April 29, 1969. From the outset, this agreement contemplated a public offering of Alodex stock as an element of the arrangement. After an agreed-to postponement, this public offering was accomplished in March of 1971. A prospectus accompanied the March 1971 issue; this prospectus contained certain financial information which had been crucial to the parties' 1969 agreement. Within two months of the March transaction, plaintiff David Belin was advised that certain financial information in the offering prospectus "was inaccurate." *See* Belin affidavit, page 3. Plaintiff Belin was at this time, and had been since just after the 1969 agreement, a member of the Board of Directors of the Alodex Corporation. He was also serving as counsel for plaintiff Cole. Finally, on July 28, 1971, a federal class action lawsuit was filed in Philadelphia, Pennsylvania. This suit challenged the Alodex public offering, naming the Alodex Corporation and certain of its directors as defendants. The matters forming the basis of the class action suit are substantially the same grounds which plaintiffs challenge here —inaccurate information regarding the financial condition of Alodex.

While the above outline of events constitutes a mere summary of the matters which transpired between 1969 and 1971, it provides a sufficient foundation on which to consider plaintiffs' individual tolling arguments. The crucial facts come from the affidavits of the plaintiffs themselves. Those affidavits, filed as exhibits in the cause, clearly establish that the plaintiffs had "discovered" the relevant circumstances regarding their § 10 claims well in advance of two years before the commencement of their lawsuits.

The pertinent facts regarding plaintiff Belin [3] reveal that he was deeply involved in the financial affairs of Alodex, and was well aware of its condition. Mr. Belin served on the Board of Directors of the Alodex Corporation throughout the period in issue here, beginning soon after the 1969 agreement. In this role, Belin wrote letters in early 1970 to the Iowa Superintendent of Securities and to the president of the Alodex Corporation which demonstrate his familiarity with the company's financial situation. For example, the January 30, 1970 letter to Superintendent Bryant specifically refers to the company's "substantial loss" for the fiscal year ending October 31, 1969. (See Exhibit A–2 to Fred Jones affidavit, filed October 15, 1974.) Further, the October 31, 1968 financial statement which forms the core of plaintiffs' cause of action was available for Belin's consideration throughout his tenure as a director. It appeared in a registration statement filed with the Securities and Exchange Commission in 1969, and it was included

---

3. The Belin complaint names two plaintiffs, David and his wife, Constance. For purposes of this ruling, the knowledge of Mr. Belin has been imputed to his wife. The parties raise no argument that she should be treated differently than her husband for purposes of these motions.

in the March 1971 prospectus which accompanied the public offering of Alodex. Thus, the circumstances regarding plaintiff Belin's position and his access to documents crucial to his 10b–5 claim clearly place him in a position where the material facts were at his disposal prior to January 1972. As past decisions have noted, a plaintiff's business acumen is relevant to the consideration of what he should have known about the financial condition of a defendant. *See* Maine v. Leonard, 365 F.Supp. 1277, 1280–82 (W.D.Va.1973).

Moreover, Mr. Belin's position with the company can be viewed as peripheral to his ability to glean the true facts regarding Alodex. As previously noted, the parties original agreement contemplated a subsequent public offering of Alodex stock. This public offering was accomplished in March of 1971. A prospectus was issued in conjunction with the offering, and this document contained some of the same financial information pertinent to the plaintiffs' 1969 agreement. Mr. Belin's own affidavit states that by May of 1971 he had been advised by the defendants that the prospectus contained "inaccurate" financial information. Indeed, the corporation issued the following letter to its shareholders on May 28, 1971:

Dear Shareholder:

Communicating with you is one of our major responsibilities. Our personal faith and support of ALODEX Corporation is even stronger today than when we last wrote you.

On Thursday, May 27, 1971, at approximatley 5:00 p. m., the following press release was given to the news media:

ALODEX Corporation, Memphis, Tennessee, announced today that based on preliminary estimates, it expects to report substantial consolidated operating loss for the fiscal quarter ended April 30 and for the

six months then ended. These expected losses are due to cost overruns in some public bid construction projects. The Housing Systems, Land Development, Real Estate and other activities of the company continue to expand profitably as planned. Lloyd E. Clarke, President, said that the corporation will release full operating results in mid-June.

Through this release we immediatly faced our responsibilities to tell the world that our company had detected within itself a problem of consequence, and we completely understood our responsibility to "tell it like it is". We want to report to you now that we are personally examining this matter very carefully and will, hopefully, be prepared to communicate with you again with the next couple of weeks as to the financial results and a more detailed explanation. In the meantime, we are directing a task force of people which is charged with the responsibility of minimizing the identified losses and maximizing profit opportunities.

The deficiencies in our general-contracting public-bid type projects are being identified and corrected and every effort is being made toward the implementation of corrective steps to insure that this situation will not again occur.

Approximately two months later, a class action based upon the Alodex public offering was filed in Pennsylvania.

The total effect of these various incidents renders it inconceivable that plaintiff Belin did not have sufficient facts at his disposal by July of 1971 to be aware of the facts pertinent to his claim. His own affidavit states that he indicated to the defendants in mid–1971 that such a suit was imminent. He further stated that he considered resigning his position on the Board of Directors as a result of the occurrences, but was persuaded not to do so.

In sum, plaintiff Belin had actual knowledge of the facts giving rise to his claim by July 1971, at the latest. Because his lawsuit was not filed until January of 1974, the federal tolling doctrine will not render his claim timely. Considering the facts in the light most favorable to him, the two-year filing period would have expired in July of 1973.

Considering next the claim of plaintiff Cole, it is the Court's conclusion that the federal tolling doctrine is equally unavailing to him. While Mr. Cole undeniably did not have the same access to corporate records which Mr. Belin did, his affidavit and deposition reveal that he relied almost solely on Mr. Belin for information regarding Alodex. At the time of the Alodex dealings, Mr. Belin had been Cole's attorney for over ten years. This relationship itself may be sufficient to impute plaintiff Belin's knowledge to plaintiff Cole. See Armstrong v. Ashley, 204 U.S. 272, 27 S.Ct. 270, 51 L.Ed. 482 (1907); Mittendorf v. J. R. Williston & Beane, Inc., 372 F. Supp. 820, 830 (S.D.N.Y.1974).

Notwithstanding the Cole-Belin relationship, the facts are clear that Cole should have independently discovered the alleged fraud two years before October 31, 1973, when he filed his complaint. The key aspects of this discovery have been set out in terms of Mr. Belin's claim. Basically, they consist of the May 1971 letter to shareholders, and the July 1971 class action lawsuit. Here, as in other cases, the plaintiff had sufficient knowledge to be "on notice" of the alleged fraud. The facts were such as to "excite inquiry" in Mr. Cole, and the statutory period need not await his "leisurely discovery of the full details" regarding his claim. Klein v. Bower, 421 F.2d 338, 343 (2d Cir. 1970); Tobacco & Allied Stocks, Inc., v. Transamerica Corp., 143 F.Supp. 323, 331 (D.Del. 1956), aff'd, 244 F.2d 902 (3rd Cir. 1957); Maine v. Leonard, supra. By Mr. Cole's own admission, he had learned "about gross inaccuracies" in the March 1971 prospectus prior to the class action lawsuit in July 1971 (Cole Affidavit, p. 2). Indeed, he admits contemplating litigation in 1971. As a whole, these facts convincingly reveal that plaintiff Cole was aware he had "a cause of action" by mid–1971. See Warner v. First National Bank of Minneapolis, 236 F.2d 853 (8th Cir. 1956). Given his October 1973 filing, his 10b–5 claim is time-barred.

## THE ESTOPPEL ISSUE

As an alternative to their tolling argument, plaintiffs assert that they would have filed timely suit against the defendants, but for the defendants' request that they not do so. In effect, they argue that the defendants are estopped from raising the statute of limitations defense. In support of this position, plaintiffs have cited the case of Charles Weitz's Sons v. United States F. & G. Co., 206 Iowa 1025, 219 N.W. 411 (Iowa 1928). The Alodex defendants have convincingly argued that the Weitz case is distinguishable here, but this finding does not foreclose the issue.

The caselaw clearly reflects the existence of a federal estoppel doctrine which may or may not be satisfied under the facts of this case. See Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, (1959); American Pipe and Construction Co. v. Utah, 414 U.S. 538, 559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); Melhorn v. Amrep Corporation, 373 F.Supp. 1378, 1380 (M.D.Pa.1974). While this doctrine has specifically been held applicable to the federal securities laws, Katz v. Amos Treat and Co., 411 F.2d 1046, 1055 (2d Cir. 1969), neither party has urged it upon the Court in this litigation.

■ Applying the Glus standard to this case, it is the Court's conclusion that the allegations regarding estoppel

are simply too vague and cursory to allow the Court to rule. The specificity which characterized plaintiffs' allegations regarding discovery are lacking on the estoppel issue. For example, plaintiff Cole's affidavit states at page 3 that "I was asked by the defendants not to proceed with any litigation because it would adversely affect the financial structure of Alodex . . ." Mr. Cole does not state *who* made such a request, or *when* it was made. Mr. Belin's affidavit does name Lloyd Clarke, the Alodex president, as the person who urged him not to instigate legal action. The circumstances of this request are quite vague, however, as other affidavits show. According to the Belin affidavit, he withheld legal action at Lloyd Clarke's request after Mr. Clarke had contacted "counsel retained by Alodex." Mr. Clarke has supplied an affidavit which essentially corroborates plaintiff Belin's. Mr. Clarke states that he discussed the possibility of the Cole and Belin suits with defendants Wilson and Johnson, and with "the attorneys who were representing Alodex." As a result, he was told "to do everything I could to persuade Marlin Cole and David Belin not to undertake legal action." Mr. Clarke does not state who told him to do this, however. In response to the Clarke affidavit, John J. Walsh, one of a number of Alodex attorneys, specifically denies counseling anyone to withhold litigation. Furthermore, no affiant has enlightened the Court as to the exact nature (e. g., promises, requests, misrepresentations) of the urgings supposedly made.

Given the unsettled nature of the record, the Court simply cannot rule on this issue at the present time.

Accordingly, it is ordered that defendants' motion to dismiss based on the statute of limitations is hereby sustained in all respects except as to the estoppel theory herein described.