ADRIANIUS LOLKUS et al., appellees, v. ARNOLD J. VANDER WILT et al., appellants.

No. 52024.

(Reported in 141 N.W.2d 600)

1076

APRIL 5, 1966.

Goldberg, Probasco & Berenstein, by Marvin S. Berenstein, of Sioux City, for appellants.

Pendleton & Pendleton, by Wendell Pendleton, of Storm Lake, and Daniel D. Sanderson, of Estherville, for appellees.

SNELL, J.—This is a civil action at law under the Iowa Securities Law, chapter 502, 1962 Code of Iowa, commonly called the "Blue Sky Law." Six plaintiffs, appellees herein, sought recovery of their purchase money paid for certificates of fractional interests in a Colorado mining venture referred to as Quickie Iron Mining Company. As the situation developed it appeared that the only thing quick about the mining company was the way in which the investors lost their money. The plaintiffs contended that the fractional interests were sold to them by the defendants-appellants in violation of the law. The cause of action is based on the civil remedy provided for in section 502.23, Code of Iowa. The defense was based upon the claim that the defendants did not know they were in violation of the law and also that four of the plaintiffs had in writing waived any right to recovery.

The case was tried to a jury and a verdict was returned in favor of the plaintiffs. From the judgments entered thereon the defendants appeal.

The situation disclosed by the record herein is fantastic. The desire for easy money and quick returns on speculative ventures inspired an almost unbelievable credulity and led otherwise careful and conservative people to substantial loss.

The State of Colorado granted Hafen Leavitt, a resident of Colorado, two mining leases covering approximately 80 acres each for a consideration of $160. Quickie Mining Company was an unregistered trade name subsequently used for the promotion of Leavitt's interests.

In August 1961 Leavitt sold to Arnold J. Vander Wilt, one of the defendants herein, a twenty-five percent interest in the net profits to be realized from the production and marketing of minerals from the leased land. For his interests in this venture Vander Wilt made payments on a D-9 caterpillar tractor totaling $20,659.66.

Defendant Raymond E. Gunter bought into the venture paying $10,000 for a one percent interest. Gunter testified that Leavitt agreed to use his money to develop the mine but the check was cashed by Leavitt in Las Vegas, Nevada. Gunter's suspicions were alerted but he accepted a rather vague excuse.

Vander Wilt and Gunter are the defendants in this action.

No useful purpose would be served by recitation of the many detailed and sometimes intricate arrangements that followed. We summarize and refer only to such matters as are essential to the legal issues before us. Arrangements were made under which Vander Wilt and Gunter were to sell, in behalf of Leavitt, interests in the mining venture.

Vander Wilt and Gunter were enthused by the opportunity to gain quick wealth. They "passed the word" and opened the door to others in the community. They acted as agents and salesmen. Initially defendants and nine others invested over $80,000. Leavitt reported that more money was needed. Another group of investors was formed. Defendants were the active salesmen. Glowing reports as to the value of the mining property, the quality and extent of the ore to be easily produced and the quick profits to be realized were circulated. The selling price of interests was raised to $21,000 for a one percent interest. The second group invested $116,752.50. All but $11.57 has been disbursed.

Altogether it would appear that over $200,000 has been "invested." This case involves only six of the investors and part of this money.

It is not claimed that either Vander Wilt or Gunter took or kept for their own use any of this money. They would have under various arrangements received additional interests and have realized greater gains than the others if the venture had proved profitable.

There have been only superficial efforts at development of the mine, no production, no profits or returns on or of the several investments. We quote from the report of an experienced professional geological engineer:

"1. So far as the Iron Mining Lease is concerned, there is no indication that iron minerals and/or iron ores exist in sufficient quantity to sustain an operation. For practical purposes, therefore, the iron lease is worthless;

"2. So far as the Beryllium Mining Lease is concerned, it does not appear to be capable of sustaining an operation and its value is considered highly doubtful; and

"3. So far as the conduct of the operation to date is evinced by the physical work of whatever nature that has been accomplished, I find that it has been done without knowledge or regard of what is specifically required and without plans which would be derived from such knowledge.

"It is my carefully considered professional opinion that the current venture relating to mining and processing iron minerals or iron ores is foredoomed to failure. I further opine that no mining or milling venture for minerals other than iron is indicated therein."

It was admitted that neither Quickie Iron Mining Company, Arnold J. Vander Wilt, Raymond E. Gunter, nor any other person interested in this project was licensed to engage in the sale of securities as defined by section 502.3(1) of the Code of Iowa (1962), and that Quickie Iron Mining Company was not authorized to do business in the State of Iowa.

Defendants also admitted that the instruments representing the "net royalty interest" were not registered as securities with

the State of Iowa as required by sections 502.6 and 502.7 of the Code of Iowa (1962), pertaining to the registration of securities.

Plaintiffs have severally served notice of rescission and demand for return of their money under chapter 502, Code of Iowa. Return of plaintiffs' certificates was tendered.

Defendants admitted that they knew there was neither license nor registration. They testified without contradiction that they did not know of the statutory requirements. Their first defense is based on their lack of knowledge.

■ I. As stated in appellants' brief "The suppression of fraudulent practices and the protection of the public from their own gullibility are commonly accepted as the primary purposes of Blue Sky Laws."

Our Blue Sky Law is found in chapter 502, Code of Iowa. The chapter provides for many things including administration by the commissioner of insurance, the meaning of terms used in the act, certain exemptions, the registration of securities, registration of dealers and salesmen, maintenance of injunctive proceedings, remedies and penalties for noncompliance.

Defendants admit in argument that the certificates of interest in the mining lease involved herein are securities as defined in section 502.3(1) and that defendants were agents as defined in section 502.3(8), Code of Iowa.

II. Section 502.23, Code of Iowa, provides:

"Remedies. Every sale or contract for sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer, or agent of or for such seller who shall have personally participated in making such sales and *at the time knew of such violations* shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser * * *." (Emphasis added.)

Defendants argue with vigor, skill and resourcefulness that in the absence of proof that defendants knew they were in violation of the law there can be no recovery. They argue that there

must be proof of a conscious awareness that they were violating the law.

Defendants cite numerous authorities from other jurisdictions but, except for an article in 14 Drake Law Review 131, none from or originating in Iowa. The cited article is informative and well written and although we disagree with the interpretation of the statute and the conclusion of the writer as indicated, infra, we quote excerpts therefrom:

"The heart of the Iowa Securities Law, so far as civil remedies are concerned, is section 502.23. The theory of this section is that a buyer of securities may at his election void the sale if the sale was made in violation of any provision of the Act. This, of course, resembles common-law rescission. Some of the pitfalls of common-law rescission have been eliminated in the statute, however. For instance the statute does not require a showing that the defendant made a material misrepresentation of fact upon which the plaintiff relied. The statute states that 'every sale or contract for sale made in violation of the provisions of this chapter shall be voidable at the election of the purchaser . . . .' Thus, rescission is available to the buyer not only when there has been a misrepresentation or fraud practiced on him, but also when the securities were not registered (and not exempt) and (in a nonexempt transaction) when the broker or dealer who sold them was not registered. As in common-law rescission, the buyer need not show any causal connection between the violation and his loss, nor need he be able to show a loss. *The statute does, however, require that the seller when he participated in the sale knew that such was in violation of the Act.* The inclusion of the knowledge requirement was, perhaps unwise. If the purpose of the statute is to protect the buyer and it does this by broadening the common-law remedies already available to him, this could have been much more effectively done by subjecting the seller to strict liability for any violation. Only two states, Iowa and Oregon, retain the knowledge requirement. All others impose strict liability on violators of these statutes. *Under Iowa law the burden is on the plaintiff to show that the persons sought to be held liable participated in making the sale*

*did so knowing that the law was being violated."* (Loc. cit. 136) (Emphasis added.)

With the italicized part we disagree.

The author concludes:

"Although the Act has materially broadened the buyer's remedies it has added the undesirable requirement that the buyer must prove that the seller knew that he violated the Act before statutory rescission is permitted. This is contrary to the common-law action for rescission, and the Blue Sky statutes of most other states. Moreover, proof of knowledge is no longer required in a criminal prosecution for a false registration statement under the Act.

"Since the policy of the Act is to protect unsuspecting investors from unfounded claims made by sellers, it is inconsistent to require the buyer to prove that the seller knew that his claims were false. This is particularly true since a felony conviction may be had for violation of some of the antifraud provisions of the Act without such proof of knowledge.

"It is submitted that the Act could better achieve its basic policy if the proof of knowledge requirement was eliminated and the buyer permitted to recover for any violation of the Act." (Loc. cit. 140)

█ While in some situations proof of knowledge or intent, i.e., scienter, is necessary, the legislature may forbid the doing of an act and provide for the consequences without regard to the intent or knowledge of the doer. State v. Dahnke, 244 Iowa 599, 57 N.W.2d 553; State v. Dobry, 217 Iowa 858, 250 N.W. 702; State v. Schultz, 242 Iowa 1328, 50 N.W.2d 9; and State v. Drummer, 254 Iowa 324, 117 N.W.2d 505.

█ As quoted from appellants' brief, supra, the purpose of the Blue Sky Law is to protect the public. Proof of knowledge is not required in a criminal prosecution for violating the Blue Sky statutes. A criminal prosecution against defendants for acts admitted here would not have depended on proof of knowledge. See sections 502.26 and 502.27, Code of Iowa, and State v. Dobry, supra. We think it not only inconsistent, as stated in the Law Review article, quoted supra, but unsound to so construe section 502.23 as requiring more proof in a civil action than would be required in a criminal prosecution.

We construe the statute to require proof of knowledge of the facts, i.e., defendants' knowledge of what they were doing.

Here defendants knew what they were selling. They knew the status of Quickie Iron Mining Company. They knew that they were involving purchasers in a $200,000 speculation. They knew they were not licensed or authorized to act as salesmen or agents in such a venture. They are presumed to know the law. They had the knowledge required by the statute. They cannot because of their inexperience in the field of security sales claim immunity because of ignorance of the statutes. The situation is within the old maxim "Ignorance of the fact excuses, ignorance of the law excuses not." For applicable maxims see 42 C. J. S., Ignorance of Law, page 380.

Defendants were not entitled to a directed verdict on this issue.

In Instruction No. 8 the trial court adopted defendants' theory as to construction of the statute requiring knowledge. The burden was placed on plaintiffs to clearly show "by such circumstances as to leave no reasonable doubt on a fair mind" that defendants positively knew they were in violation of the law.

This was a heavier burden than plaintiffs were required to bear. Defendants may not complain.

III. Some time prior to April 10, 1963, there was instituted in Sioux District Court Cause No. 12959 entitled:

"STATE OF IOWA, ex rel., William E.
Timmons, Commissioner of Insurance,
State of Iowa,
 Plaintiff,
 v.

QUICKEY IRON MINING COMPANY, a
corporation; RAYMOND E. GUNTER;
ARNOLD J. VANDERWILT,
 Defendants."

In connection therewith a temporary injunction was issued against the defendants named in the action. On April 10, 1963,

there was filed a "Confirmation of Stipulation" signed by the Commissioner of Insurance, Quickie Iron Mining Company by Hafen Leavitt, agent, Raymond E. Gunter and Arnold J. Vander Wilt.

The stipulation corrected the designation of the company and set forth background information. Defendants agreed to prepare and file with the commissioner "with all convenient speed" all necessary information and to refrain from all further efforts to sell or offer to sell securities in the company unless and until permission had been granted to commence such sale or offering.

Defendants further agreed:

"7(c) – To forthwith offer to refund to all residents of the State of Iowa who may have acquired a security of Quickie Iron Mining Company from the defendants, or from any person who may be construed to be the agent of the defendants, or any of them, in the sale and distribution of the securities of Quickie Iron Mining Company, the full amount paid by such purchaser, together with interest on such amount for the period from the date payment by such purchaser was made down to the date of repayment, such interest to be computed as provided by Sect. 502.23(2) of the Code of Iowa (1962), and to furnish to the Commissioner of Insurance of the State of Iowa the receipts of such persons who may elect to accept such refunds, showing reimbursement, or the written election to retain their present security in Quickie Iron Mining Company. Such receipts or written elections shall be furnished the Commissioner by the defendants within sixty (60) days from and after March 29, 1963, unless such time is further extended by him."

On April 19, 1963, defendants Vander Wilt and Gunter mailed to interest holders, including plaintiffs herein, a letter as follows:

"Orange City, Iowa
"April 19, 1963

"Dear Interest Holders of Quickie Mining Co.,
"We are having a meeting of interest holders for the Iowa group on this Monday – April 22, 1963, at

8:00 o'clock P.M. at the Memorial Room in the Sheldon Community Building.

"We would like you to attend so as to discuss the progress that has been made, the problems we encounter, and any suggestions you may have that may be beneficial to all the group.

"We are looking forward to seeing you so we may all decide a course to follow.

"Sincerely,

"Arnold J. Vander Wilt

"Raymond E. Gunter"

Preparatory to this meeting defendants had prepared waivers in the following form:

"To: COMMISSIONER OF INSURANCE OF THE STATE OF IOWA; 'QUICKIE IRON MINING COMPANY'; ARNOLD J. VANDER WILT; RAYMOND E. GUNTER; HAFEN LEAVITT

"I, .............................., do herewith state and affirm that I am familiar with and aware of the provisions of Chapter 502 of the 1962 Code of Iowa as amended and that I have purchased an interest in a net operating royalty of certain mining properties located in the State of Colorado and that I do herewith refuse a refund of such investment and do elect to retain my interest in said mining venture. I do further state that I make this election, being aware of the suit brought in the District Court of Iowa in and for Sioux County, known as Equity No. 12959 and knowing the contents of one certain stipulation entered into and filed on the 10th day of April, 1963 in said action and that I have factual knowledge of the status of the mining project.

"Dated this 22nd day of April, 1963.

"............................................."

At the meeting four of the plaintiffs herein, Leonard Vanden Bosch, Kerwin R. Hoffs, John Broek, Jr., and Cornie Broek, signed and delivered a copy of the waiver.

■ Defendants herein interposed these waivers as absolute defenses to the claims of plaintiffs who signed. In reply plain-

tiffs alleged that the waivers were obtained by defendants' fraud, false representations and concealment of material facts.

On or about May 24, 1963, each plaintiff gave written notice to each defendant making demand for refund and tendering return of the written instruments of interest.

There was evidence that at the April 22 meeting the stipulation of defendants was neither read, explained nor its contents disclosed. There was no offer to refund. There was no mention of the rights of purchasers. Defendants gave good reports on the mine and good reports on the ore in the mine. Defendants then said that the Security Commission had stopped them from selling the securities "and once they got that thing cleared up they could continue selling securities, and—well we would all get rich." Some of the plaintiffs also testified directly and apparently without objection that the signatures on the waivers were obtained by fraudulent misrepresentation.

The first knowledge as to the true situation and the rights of purchasers to a refund came a few days after the April 22 meeting. One of the plaintiffs, Adrianius (Jim) Lolkus, visited the courthouse and checked the record. He then had a visit with Mr. Vander Wilt and told him he had read the injunction and mentioned the stipulation. Mr. Vander Wilt said the stipulation did not mean anything. Mr. Lolkus twice demanded his money and Mr. Vander Wilt replied "youse ain't a-goin to get your money."

There was ample evidence to generate a jury question on the issue of fraud, misrepresentation and concealment.

 Defendants argue that the jury was not properly charged that the mere expression of an opinion or a prediction is without legal significance and cannot form the basis of an action or defense in fraud or deceit. We find no such issue raised in the trial court, no request for such an instruction nor exception because of omission.

The issue is not before us. Rule 196, Rules of Civil Procedure. Crist v. Iowa State Highway Commission, 255 Iowa 615, 628, 123 N.W.2d 424.

The issue of fraud in obtaining the waivers was presented to

the jury. The jury having found for plaintiffs the defendants may not now claim relief from liability because of the content of the waivers.

The trial court instructed the jury at length properly placing the burden of proving the essential elements of fraud on plaintiffs. The instructions covered the elements of fraud, the duties of both plaintiffs and defendants, elements of deception and proof of reliance thereon by plaintiffs. We find no error therein.

IV. The "Confirmation of Stipulation" with stipulation attached thereto, referred to in Division III, supra, was admitted in evidence as an admission against interest and for no other purpose. The court so ruled. Later in the trial the court file of which it was a part was received in evidence without objection.

Defendants requested and the court refused an instruction that the exhibit might be considered as an admission against interest and for no other purpose and could not constitute the basis of liability.

The trial court has a large measure of discretion in the giving or not giving of cautionary instructions. Nicholson v. City of Des Moines, 246 Iowa 318, 326, 67 N.W.2d 533; Clarke v. Hubbell, 249 Iowa 306, 315, 86 N.W.2d 905.

Nowhere in the instructions is there any suggestion that liability could be based on the stipulation. The issues submitted were pursuant to the statute. Nowhere is there any suggestion that plaintiffs could recover as third-party beneficiaries of the stipulation. The stipulation required defendants to "forthwith offer to refund" but the liability for refund was statutory. The stipulation was a recognition of defendants' statutory duty but created no greater financial liability than existed under the statute.

The court having carefully and explicitly stated the propositions necessary for recovery there was no abuse of discretion in not instructing on matters not constituting a basis for recovery.

V. The case was tried by experienced and competent counsel. The jury was fully instructed. In their entirety the instruc-

tions were more favorable to defendants than was required. We find no reversible error.

The case is—Affirmed.

All JUSTICES concur.