430 F.2d 362
 Samuel H. MOERMAN, Appellee,
v.
ZIPCO, INC., Arthur M. Lewis, Trustee in Bankruptcy, Donald S. Brodeur, Defendants,
Samuel Nasser, Joseph C. Snyder, Joseph Nasser, Isidore Dayan and Rebecca Bibi, as Administratrix with the Will annexed of Morris Bibi, deceased, Appellants.
 Nos. 672-673.
 Docket 34391.
 Docket 34394.
 United States Court of Appeals, Second Circuit.
 July 6, 1970.
 
 Joseph J. Einhorn, New York City, for appellants Samuel Nasser, Snyder, and Joseph Nasser.
 Ferris, Adams & Creidy, New York City, for appellants Dayan and Bibi.
 Before KAUFMAN and FEINBERG, Circuit Judges, and TIMBERS, District Judge.*
 PER CURIAM:
 
 
 1
 Petitioners seek a "rehearing in banc or reargument" of a decision this panel handed down on April 2, 1970, the same day we heard argument in the case. 422 F.2d 871. Petitioners claim that they were denied "the mature appellate consideration" that the case requires, that consideration by the full court is necessary to secure uniformity in its decisions and that the case is of exceptional importance. Insofar as the petitions seek a rehearing by the panel, we deny them.
 
 
 2
 Despite the statements in the petition of Dayan and Bibi implying the contrary, prior to the time decision in this case was reached, each member of the panel had read the opinion of the district judge, reported at 302 F.Supp. 439 (E.D.N.Y.1969), and the four briefs filed by the parties (a brief and reply brief for appellants Dayan and Bibi, a brief for appellants Samuel Nasser, Joseph C. Snyder and Joseph Nasser, and a brief for appellee Samuel H. Moerman) and was quite familiar with the material in the Appendix and the Exhibit volume. Oral argument was full and counsel had adequate opportunity to correct any misunderstandings of the facts or of the law which they thought any member of the panel had. The "important exhibit" which is emphasized in the petition of Dayan and Bibi was properly characterized by the trial judge as a "routine" letter which did not support their basic contention. The panel's decision to affirm was made on the basis of thorough and mature consideration. Since the opinion of Judge Judd appealed from, some 20 pages in length, dealt fairly and in a reasoned fashion with all of the issues in the case, affirmance was upon that opinion. For scholarly approval of that practice, see Llewellyn, The Common Law Tradition: Deciding Appeals 318 (1960). Nevertheless, in view of the impassioned nature of the petitions for rehearing and the undoubted impact of the decision upon the individuals involved, we have thoroughly examined the case again.
 
 
 3
 Judge Judd found appellants liable to plaintiff Samuel H. Moerman for the sum of $25,000, representing the amount paid by plaintiff for 12,500 shares of Zipco, Inc. Appellants' liability was based upon a portion of the Connecticut Blue Sky Law, which provided that a purchaser of a security sold in violation thereof may "recover the consideration paid * * *, together with interest at six per cent per annum from the date of payment * * *" from
 
 
 4
 [e]very person who directly or indirectly controls a seller liable under subsection (a) of this section, every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale and every broker or dealer or salesman who materially aids in the sale shall be liable jointly and severally with and to the same extent as the seller * * *.
 
 
 5
 However, the same provision excused liability if the person sued was an otherwise liable non-seller who sustains the burden of proof that he did not know, and in the exercise of reasonable care would not have known, of the existence of the facts by reason of which the liability is alleged to exist.
 
 
 6
 Conn.Gen.Stat. § 36-312a(b) (1959 Supp).[1] The attack in the petitions for rehearing focuses on the interpretation of this exculpatory language in the Connecticut statute.[2] Judge Judd construed it to mean that ignorance of the Connecticut law was no defense so long as the person charged knew that the securities in question were to be sold to the public without registration. The judge stated in his opinion, 302 F.Supp. at 450:
 
 
 7
 As participants in meetings of the board of directors, all the individual defendants knew that the S.E.C. registration was something in the future, and it is a fair inference that they knew that there had been no Connecticut registration. It is doubtful whether they could defeat liability even by showing that they had no knowledge on this point, for they are charged with the duty to comply with a statute which requires registration, and in the exercise of reasonable care, they could have determined that there had been no registration by the corporation or any of the defendants under the Connecticut statute.
 
 
 8
 Judge Judd's construction of the Connecticut statute conformed to constructions given similar, and arguably broader, requirement of knowledge in other state statutes. The analogous section of the Oregon Blue Sky Law provided for the liability of
 
 
 9
 every director, officer or agent of the seller, if such director, officer or agent with knowledge of the violation personally participated or aided in any way in making [the sale] * * *. [Emphasis added.]
 
 
 10
 Ore.Rev.Stat. § 59.250(1). The Oregon Supreme Court, sitting in banc, held that "such knowledge is established by proof that the person knew the security was unregistered and it is not necessary, in addition, to prove that the person knew that the law required the security to be registered." Spears v. Lawrence Securities, Inc., 239 Or. 583, 399 P.2d 348, 350 (1965) (in banc).[3] See Lolkus v. Vander Wilt, 258 Iowa 1074, 141 N.W.2d 600, 604 (1966) (holding that notwithstanding similar provision, Code of Iowa § 502.23 (1962), defendants could not "because of their inexperience in the field of security sales claim immunity because of ignorance of the statutes").
 
 
 11
 In their petition appellants Dayan and Bibi have made several arguments, to which we now turn. Citing DeMarco v. Edens, 390 F.2d 836 (2d Cir. 1968), they contend that the analogous provisions of the Securities Act of 1933, 15 U.S.C. §§; 77l(2), 77o, from which the Connecticut statute is said to derive, have evoked a response in this court different from that of the trial judge. That is not so. In DeMarco, the defendants did not know the facts which, if known or reasonably knowable, would have led to their liability — i. e., that their underwriter would neither remit proceeds nor consummate the sales transactions promptly. 390 F.2d at 841-842. It was not at all a case where the theory of exculpation was ignorance of the requirements of the law. In the present case the trial judge found, as noted, that the defendants knew or could reasonably have determined the key operative fact that there had been no Connecticut registration.
 
 
 12
 Dayan and Bibi further contend that the proper standard to be applied to them is not "ignorance of the law is no excuse," but "prudence in the management of one's own property," citing 15 U.S.C. § 77k(c). However, the latter standard is applicable by the terms of the statute containing it only to 15 U.S. C. § 77k(b) (3), and we are dealing with the Connecticut Blue Sky Law, which contains different language.
 
 
 13
 Dayan and Bibi also ask what is "the difference between the statute before and after the amendment, that is to say with and without the exculpatory language," if the trial judge is correct in his view that ignorance of the law is no defense. If by this appellants mean that the Connecticut statute was amended in any significant way, they are wrong — the only change between the version applicable to them, Conn.Gen.Stat. § 36-312a(b), and the current one, C.G.S.A. § 36-346(b), is the citation number and the substitution of "could not have known" in the new version for "would not have known", hardly a significant change. If they are referring to the change in the Oregon statute, the revision, as noted, does not purport to change the prior Oregon reading which would clearly hold them liable. If, as seems most likely, they are asking the question rhetorically, we note that we are not faced with a statute without exculpatory language. If we were, we would expect that it would impose liability regardless of lack of knowledge of the operative facts.
 
 
 14
 For the reasons given above, we adhere to our original decision affirming on the opinion below. Those portions of the petitions which seek a rehearing in banc will be processed in accordance with our usual procedures.
 
 
 
 Notes:
 
 
 *
 Chief Judge of the District of Connecticut, sitting by designation
 
 
 [1]
 Now C.G.S.A. § 36-346(b)
 
 
 [2]
 We note that the petition for rehearing for Samuel Nasser, joined by Joseph C. Snyder and Joseph Nasser, neglects to point out that Judge Judd found Samuel Nasser also liable for violating Rule 10b-5 as well as the Connecticut statute
 
 
 [3]
 Oregon revised its Blue Sky legislation in 1967. The provision replacing the one construed inSpears, Ore.Rev.Stat. § 59.115(b) (3) (1967), is virtually identical to the Connecticut statute. One commentator has noted that the new Oregon provision "does not purport to delete the potential liability of a nonseller who participates in the sale not knowing that the law requires that the security be registered." Basye, A Glimpse of Oregon's Blue Sky Legislation: The Revision of 1967, 47 Ore.L.Rev. 403, 413 (1968).