831 F.2d 994
 56 USLW 2324
 Benjamin KRAMER, as personal representative of the Estate of
Harry Kramer, Leo Savino and Mary Savino, his
wife, Plaintiffs-Appellants,
v.
Johnny UNITAS, Jack Drury and Associates, Inc., Jack Drury,
Defendants-Appellees.
 No. 86-5079.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 6, 1987.
 
 Robert B. Miller, Friedman & Miller, North Miami Beach, Fla., Charles L. Weissing, Kass, Hodges & Massari, Tampa, Fla., for plaintiffs-appellants.
 Charles M. Tatelbaum, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., Baltimore, Md., for defendants-appellees.
 Charles M. Tatelbaum, Kass, Hodges & Massari, Tampa, Fla., for Unitas.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and EDMONDSON, Circuit Judges, and HOFFMAN*, Senior District Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 This appeal raises an interesting question regarding Florida's state law on fraud. Plaintiffs-appellants challenge the district court's grant of summary judgment to defendants-appellees. Specifically, plaintiffs contend that a jury should decide whether defendants made any misrepresentations and whether defendants acted knowingly or recklessly, inducing plaintiffs' justifiable reliance. Today we affirm the district court and conclude that the court applied the proper legal standards when it granted defendants' summary judgment motions.
 
 
 2
 Defendant Johnny Unitas is a well known football player who starred as a quarterback for the Baltimore Colts. He does not have any specialized financial acumen, although he has operated a restaurant. In 1979 First Fidelity Financial Services, Inc., a Florida corporation that acted as a licensed mortgage/investment broker, contacted Unitas; First Fidelity offered to pay Unitas a commission if he acted as the company's spokesman.[1] Thereafter Unitas agreed and provided some pictures and voice work for an advertising campaign.
 
 
 3
 Defendants Jack Drury and his agency, Jack Drury & Associates, Inc. [collectively referred to as "Drury"], a Florida corporation, handled the agreement between Unitas and First Fidelity. Under that agreement Unitas promised to "render services as an on-camera player for the production of television commercials, radio commercials and allow his likeness to be used in print and collateral material." In return, Unitas received $5,000.00 compensation, while Drury earned $12,000.00. Furthermore, Unitas and Drury reserved the right "to have reasonable approval over all copy for the above services."
 
 
 4
 Thereafter, Drury helped to develop certain radio spots that featured Unitas as First Fidelity's spokesman. In the spots Unitas reminded his Florida audience of his reputation as a football player and introduced his "friends at First Fidelity." A First Fidelity representative then announced that "you can earn up to 18.33% annual yield," that the investment purchase "may be insured," and that the company meets "all prudent man requirements." Unitas then closed by inviting the public to call First Fidelity for more information.
 
 
 5
 Subsequently, First Fidelity printed newspaper advertisements and brochures, which it sent to interested investors. These advertisements and brochures contained similar, more detailed information on First Fidelity's investment portfolio; they likewise featured Unitas, whose picture and purported signature[2] appeared next to the company's statements. Unlike the radio spots, however, it seems that Unitas never saw or approved of the printed materials.[3]
 
 
 6
 Harry Kramer--whose personal representative Benjamin Kramer now sues on behalf of his estate--, Leo Savino, and his wife, Mary Savino, are Florida residents who invested with First Fidelity. After hearing Unitas' radio spots and seeing the newspaper advertisement, they wrote for more information. First Fidelity responded by sending a company letter along with a brochure. Kramer and the Savinos then called First Fidelity and spoke with a company vice president, who positively assured them a high return on their investment as well as some "insurance." Later, Kramer drove to the offices of Balogh Securities, Inc., a First Fidelity subsidiary. After meeting with a sales representative, Kramer invested $56,500.00 in a First Fidelity mortgage pool. A few days later the Savinos invested $20,000.00.
 
 
 7
 First Fidelity proved to be a fraud.[4] The business soon filed for bankruptcy, and its investors lost practically all of their money. The present case arose when Kramer and the Savinos sued Unitas and Drury for common-law fraud, inter alia.[5]
 
 
 8
 Before the pre-trial conference, all defendants moved for summary judgment on the grounds that the facts did not establish any elements of claims for fraud or conspiracy.[6] A magistrate found no evidence of a conspiracy and recommended that Drury be granted summary judgment; the magistrate recommended against summary judgment for Unitas. After Unitas objected to the magistrate's report, the district court considered all of defendants' motions.
 
 
 9
 On December 19, 1985, the district court partially adopted the magistrate's report and granted defendant Drury's summary judgment motion.[7] On May 29, 1985, the district court granted Unitas' summary judgment motion and entered summary final judgment based upon the following rationale:
 
 
 10
 Plaintiffs do not contest Unitas' contention that he had no involvement with the creation, promotion or dissemination of the brochures.... Without the premise that Unitas actually made the misrepresentation at issue, the Court's analysis must cease. The unrebutted facts of this case show that Unitas did not make any representation upon which the plaintiffs relied and thus no case for actionable fraud can be made against him.
 
 
 11
 Kramer v. Unitas, No. 83-1324 (S.D.Fla. May 29, 1986).
 
 
 12
 On appeal our review of this case necessarily begins with a jurisdictional question that we raise sua sponte. Plaintiffs filed their notice of appeal after the district court granted defendant Drury's summary judgment motion, but apparently before the court formally granted defendant Unitas' motion. See note 7. Plaintiffs thus ask us to review all defendants' motions even though no summary final judgment had been entered prior to plaintiffs' notice of appeal. Our case law states that "a premature appeal [is] reviewable where a subsequent judgment of the district court effectively terminated the litigation ... [and] [n]o new notice of appeal was filed after the subsequent judgment...." Robinson v. Tanner, 798 F.2d 1378, 1382 (11th Cir.1986) (interpreting the holding in Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1231 (5th Cir.1973)), cert. denied, --- U.S. ----, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987);[8] see also Markham v. Holt, 369 F.2d 940, 942 (5th Cir.1966). Thus, even though the notice of appeal was premature, we find that appellate jurisdiction properly exists in this case to review all of plaintiffs' claims.
 
 
 13
 We next turn to the procedural posture of plaintiffs' appeal. Because the district court granted defendants' summary judgment motions, we likewise look to the Fed.Rule Civ.Proc. 56(c) standard:[9] summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has interpreted this standard to mandate summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (discussing the quantum of evidence necessary to withstand summary judgment).[10] Several recent cases have granted summary judgment to defendants who faced fraud or fraud-like claims. See, e.g., Windon Third Oil & Gas v. Federal Deposit Ins. Corp., 805 F.2d 342, 345-47 (10th Cir.1986) (relying on Celotex and Anderson, while upholding summary judgment against plaintiffs' SEC Rule 10b-5 claims), cert. denied, --- U.S. ----, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); Macon-Bibb County Hosp. Auth. v. Georgia Kaolin Co., 646 F.Supp. 90, 92-95 (M.D.Ga.1986) (relying on Celotex while granting summary judgment against plaintiff's common-law fraud claim), aff'd, 817 F.2d 98 (11th Cir.1987).
 
 
 14
 Although fraud claims ordinarily involve material fact disputes that may preclude a grant of summary judgment, this is not such a case. As the district court aptly noted, based on the record plaintiffs failed to surmount at least one elementary hurdle: neither Drury nor Unitas made any false representations regarding First Federal's investment offerings. Defendants concededly approved and participated in the Florida radio spots; but Unitas merely introduced himself, called first federal representatives his "friends", and asked the audience to call First Federal for more information. Unitas' contract reserved the right to approve all subsequent promotional features; yet nothing in the district court's records suggests that Unitas or Drury knew about the newspaper advertisements or brochures, which in any event contained no representations by the defendants.
 
 
 15
 To prevail under Florida law plaintiffs had to prove all of the following elements: "a false representation of material fact, with knowledge of the representation's falsity or a negligent representation without a reasonable basis, intent to induce reliant action, and damage resulting from justifiable reliance." Cameron v. Outdoor Resorts of America, Inc., 608 F.2d 187, 195 (5th Cir.1979), modified on reh'g, 611 F.2d 105 (1980). Plaintiffs fail to meet even the first, threshold element.
 
 
 16
 Plaintiffs cite several authorities that apply inappositely to the facts in this case. In Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948), the Supreme Court cautioned that "[a]dvertisements as a whole may be completely misleading although every sentence separately considered is literally true. This may be because things are omitted that should be said, or because advertisements are composed or purposefully printed in such way as to mislead." Id. at 188, 68 S.Ct. at 597. Yet Donaldson did not address the question before us today: namely, whether the district court properly granted summary judgment when plaintiffs failed to show that Unitas and Drury made any representations, false or otherwise, regarding First Fidelity's investment offerings.
 
 
 17
 Likewise, plaintiffs misplace their reliance upon Peak Laboratories, Inc. v. United States Postal Service, 556 F.2d 1387 (5th Cir.1977), and In re Cooga-Mooga, Inc., 92 F.T.C. 310 (1978). In those cases the defendants directly or indirectly endorsed products and made representations that proved false. See Peak Laboratories, Inc., 556 F.2d at 1388-90 (corporate defendant promoting a weight reducing product, "Fat-Off"); In re Cooga-Mooga, Inc., 92 F.T.C. at 311-17 (celebrity Charles E. ("Pat") Boone endorsing a skin care product, "Acne-Statin"). Defendants Drury and Unitas did not endorse a "product", First Fidelity. Rather, Unitas merely introduced the company and suggested that the audience call and investigate for themselves.
 
 
 18
 Under Florida law, "to constitute actionable fraud, a false representation must relate to an existing or pre-existing fact...." Cavic v. Grand Bahama Development Co., Ltd., 701 F.2d 879, 883 (11th Cir.1983). At most Unitas' statements referring to his "friends" at First Fidelity constituted sales talk, or puffing, which standing alone would not prove fraud. See id. Unitas' voice or picture may have initially sparked the plaintiffs' attention. But, according to the district court's records, nothing Unitas or Drury said or did constituted a "representation", false or otherwise, that would support plaintiffs' fraud claims. Unitas merely invited further inquiries. Cf. Coon v. Charles W. Bliven & Co., Inc., 534 F.2d 44, 47 (5th Cir.1976) (finding no "material representations" upon which plaintiffs could justifiably rely, given that plaintiffs conducted their own independent investigations), cert. denied, 429 U.S. 980, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976).
 
 
 19
 Thus, today we uphold the district court's grant of defendants' summary judgment motions.[11] Defendants properly supported their motions and satisfied the requirements of Celotex and Anderson; the plaintiffs have failed to prove at least one key element of their fraud claim.[12]
 
 
 20
 Accordingly, the district court is AFFIRMED.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Unitas never was an officer, director, or shareholder of First Fidelity, nor did he invest with the company
 
 
 [2]
 Nothing in the district court's record establishes the authenticity of the signature, and Unitas flatly contests its authenticity
 
 
 [3]
 Apparently nothing in the Record before the district court indicated that either Unitas or Drury approved or knew about the newspaper advertisements and brochures
 
 
 [4]
 Apparently, neither Drury nor Unitas ever investigated the soundness of First Fidelity or of its investment offerings
 
 
 [5]
 Plaintiffs originally filed their claim against Unitas in a Florida state court case, Kramer, et al. v. Unitas, No. 83-4574 (11th Jud.Cir.Fla.1983). Unitas, who resided in Maryland, removed the case to federal court based on diversity of citizenship. 28 U.S.C. sec. 1332(a); id. sec. 1441(a)
 Plaintiffs then amended their complaint to include Drury as well as Unitas. Their amended complaint contained eight Counts: Counts I and II alleged fraud and misrepresentation against all defendants; Counts III and IV asserted that Unitas was liable for unlawfully participating in a mortgage transaction; Counts V and VI claimed that the defendants participated in the unlawful sale of a mortgage security; Count VII contended that the defendants engaged in a conspiracy to defraud; and Count VIII pled violations of federal securities laws under section 10(b) of the Securities Exchange Act, 15 U.S.C. sec. 78(j).
 The district court dismissed Counts III and IV upon Unitas' Fed.Rule Civ.Proc. 12(b)(6) motion. Subsequently, the plaintiffs voluntarily dismissed Counts V, VI, and VIII. Thus, only the fraud and conspiracy to defraud Counts proceeded through the discovery stage of litigation.
 
 
 [6]
 For background, see Fed.Rule Civ.Proc. 56. Upon filing their summary judgment motions, defendants presented depositions, affidavits, and interrogatories to support their position. Plaintiffs apparently did not submit any contrary affidavits or discovery materials; instead they relied on defendants' materials
 
 
 [7]
 It is not entirely clear whether at this point the court orally announced from the bench that it would grant Unitas' summary judgment motion. Thus, in our discussion of jurisdiction below, we do not rely upon Fed.Rule App.Proc. 4(a)(2). It is clear that the court did not issue its final judgment in writing until May 29, 1986. In the interim, on January 17, 1986, plaintiffs filed a notice of appeal to contest all of the judgments in defendants' (Unitas and Drury) favor; that notice stated that plaintiffs appealed from the "Summary Judgment granted in favor of Defendant, JOHNNY UNITAS, announced by the District Court on December 19, 1985, which has not been entered as a written final judgment as of the present time."
 
 
 [8]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc ), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981
 
 
 [9]
 See Thrasher v. State Farm Fire & Cas. Co., 734 F.2d 637 (11th Cir.1985)
 
 
 [10]
 In Celotex the Court discussed the burden that each party must bear on a summary judgment motion. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, ..."; but Rule 56 contains "no express or implied requirement ... that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex, 106 S.Ct. at 2553. Rule 56(e) then "requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. (quoting Rule 56(e))
 In Anderson the Court discussed the quantum of evidence necessary to sustain a summary judgment motion. The Court stated as follows: "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there can be no genuine issue of material fact...." Anderson, 106 S.Ct. at 2510. Regarding materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.
 
 
 [11]
 Because we hold that Drury and Unitas made no misrepresentations, we need not reach the question of whether defendants had some duty to investigate. The existence or lack of existence of a duty to investigate on defendants' part would become pertinent only if defendants had made some misrepresentation
 
 
 [12]
 On appeal plaintiffs argue alternatively that they have made out a proper claim for relief under Fla.Stat.Ann. Sec. 817.41 (West 1986 & Supp.1987) ("Misleading Advertising Prohibited"). Yet to recover under this statute, plaintiffs must establish all the elements of common-law tort fraud, see Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367 (Fla. 4th Dist.Ct.App.1981), which plaintiffs have failed to do