**Paul T. MARTIN and Harold Bridges, Plaintiffs–Appellants,**

v.

**T. V. TEMPO, INC., et al., Defendants–Appellees.**

**No. 79–1232.**

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1980.

Daniel I. MacIntrye, Atlanta, Ga., Stan Durden, Jefferson, Ga., for plaintiffs–appellants.

Parker, Johnson & Cook, G. Donald Johnson, Atlanta, Ga., for defendants–appellees.

G. William Long, III, Atlanta, Ga., for Sylvia Walls, Colonial Press & John Graff.

Before VANCE, FRANK M. JOHNSON, Jr., and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

Plaintiffs Martin and Bridges filed a multicount complaint alleging violations of federal and state securities laws,[1] antitrust violations, common law fraud and breach of contract. After discovery was accomplished, both sides moved for partial summary judgment on the question whether the Associate Publisher Agreements sold to plaintiffs by defendants are securities under federal and state law.[2] The district court ruled that the agreements are not securities. It dismissed the federal and state securities claims with prejudice and dismissed all other claims without adjudication. Martin and Bridges appeal only with respect to the ruling on their securities claims.

The undisputed facts were stated in the trial court's order as follows:

Defendants are the innovators, owners and principal actors behind the T. V. Tempo magazine, a small weekly publication listing television schedules and carrying advertisements. The magazine is distributed at no charge to the consumer; revenues are derived from the sale of advertisements primarily to local merchants. Plaintiffs' investment in Associ-

---

1. Sections 12(1) & (2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* and 77q; sections 10, 15(a) and 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78*o et seq.* and 78cc, and Rule 10b–5, 17 C.F.R. § 240.10b–5; sections 3, 5 and 12(a) of the Georgia Securities Act of 1973, Ga. Code Ann. §§ 97–103, 97–105 and 97–112(a) (1976).

2. Our review is influenced by the fact that both sides moved for summary judgment. As we observed in *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.1980), "[t]hat motion amounted to a representation by the moving counsel, as officers of the court, that the case was fully at issue, that all theories of liability and all defenses had been presented, and that the case was ripe for summary treatment."

ate Publisher Agreements entitles them to an exclusive franchise to sell advertisements for and arrange distribution of T. V. Tempo magazines in a defined area, typically one county. Defendants are obligated under the agreement to provide initial training and other assistance to the Associate Producer and any employees he might hire. All revenues from the sale of local advertisements are the property of the Associate Producer who does all of the billing. The Associate Producer must pay his own and employee expenses, must pay for the composition and printing of the magazines distributed in his area and must also pay a service fee to the defendants. Any revenues remaining after payment of these expenses are the Associate Producer's profit. For the purposes of the present motions the court accepts plaintiffs' contentions that as investors they held no reasonable expectation of control over the composition, quality and printing of the magazines or the price to be charged for advertising. With minor limitations, however, they were free to sell advertising space to anyone in their local area and to assist the buyer in arranging the rough composition for his advertisement.

At various times during 1976 plaintiffs acquired franchises covering a number of counties or parts of counties in Georgia and Florida. The venture proved to be unsuccessful and plaintiffs ultimately went out of business. They allege that in offering and selling the franchise agreements defendants knowingly made material misrepresentations of fact on which they relied. They sought recovery of substantial sums alleged to have been paid by them to defendants together with interest and attorneys fees. The various contentions of the parties center on the single question addressed by the district court: is the franchise agreement a security.

The starting point is the Supreme Court's definition in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946):

[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . .

*Id.* at 298–99, 66 S.Ct. at 1103.[3] *See* 15 U.S.C. §§ 77b(1) and 78c(a)(10). Our opinion in *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir.1974), dealt with the subsequent development of the law with respect to the third element of the *Howey* test, "solely from the efforts of [others]." Concluding that a literal application of the test is unwarranted, *id.* at 480, we held that the proper standard was that explicated in *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise," *id.* at 482. *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d at 483; *accord, Cameron v. Outdoor Resorts of America, Inc.*, 608 F.2d 187, 193 (5th Cir.1979), *modified on other grounds*, 611 F.2d 105 (5th Cir.1980).

In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Supreme Court noted but declined to express any view as to the correctness of the *Turner* standard. *Id.* at 852 n.16, 95 S.Ct. at 2060 n.16. It did, however, reaffirm that

[t]he touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others . . . . In such cases the investor is "attracted solely by the prospects of a return" on his investment.

*Id.* at 852, 95 S.Ct. at 2060.

The district court viewed the agreements as no different than ordinary franchise

---

**3.** The *Howey* court stated that "[s]uch a definition necessarily underlies this Court's decision in *Securities Exch. Commission v. C.M. Joiner*

*Leasing Corp.*, 320 U.S. 344 [64 S.Ct. 120, 88 L.Ed. 88] . . . ." 328 U.S. at 299, 66 S.Ct. at 1103.

agreements that the courts have uniformly found not to be investment contracts. *Koscot*, on the other hand, emphasized the indispensable presence of "schemes in which promoters retain immediate control over the essential managerial conduct of an enterprise and where the investor's realization of profits is inextricably tied to the success of the promotional scheme" in finding that a pyramid sales scheme constituted a security. *Koscot* distinguished on that basis "a conventional franchise arrangement, wherein the promoter exercises merely remote control over an enterprise and the investor operates largely unfettered by promoter mandates." 497 F.2d at 485. Plaintiffs argue that defendants retained the real authority and control that determined the success or failure of the enterprise. They also stress the amount of consulting and management services that defendants represented that they would perform, contending that only simple ministerial tasks were required on the part of plaintiffs.

In the present posture of the case, plaintiffs are entitled to have us view the material evidence in the light most favorable to them and to indulge every reasonable inference from those facts in their favor. *American Telephone & Telegraph Co. v. Delta Communications Corp.*, 590 F.2d 100, 102 n.1 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). Even so viewed, however, the evidence demonstrates that the agreement fails to meet the *Koscot* test.

Plaintiffs may have been misled as to the prospects for success or the amount of effort required to sell advertising, but there is less indication that they were misled as to who was to perform what function. Illustrative testimony of appellant Martin is in point:

Q. When you were getting ready to buy all these franchises, you understood that T V Tempo was going to provide start–up training to get the business going; is that right? Training your employees for you?

A. Right. Whatever training was necessary.

Q. And they were going to come along and provide ongoing advice as to how to run?

A. Right.

Q. Now that is typical of just about any kind of franchise, I would suppose?

A. Right.

Q. You didn't understand they were going to run the business for you though, did you?

A. No, no.

Q. You knew your employees were going to have to run the business, and they were going to be advised and counseled by the T V Tempo representatives?

A. Right.

The testimony of appellant Bridges is to the same effect:

Q. You didn't expect the T V Tempo franchise to run itself, though, did you?

A. No, it will not run itself. That's the reason you hire a Manager.

Q. It's got to have someone on the scene running it?

A. Right. Nothing will run by itself.

\*   \*   \*   \*   \*   \*

Q. Did anybody from T V Tempo or Colonial Press or Barrett–Walls Inc., or any of the individuals that are in this lawsuit–did any of them tell you that you couldn't run the business yourself, if you wanted to?

A. Well, I think they expected me to run the business under their procedures and policies but–or expected the managers to run it.

\*   \*   \*   \*   \*   \*

Q. You don't think, if you hire somebody good to run one, that it will be a money–producing business?

A. Not to the extent that they say it would be. I think T V Tempo might be good for an owner–operator, but not for an investor. I think it's foolish.

Q. You think the only way you can really make one go is to operate it yourself?

A. Right, and then take a lot of long, hard hours.

In this franchise arrangement, plaintiffs had immediate control over the essential managerial conduct of the enterprise and defendants exercised merely remote control. The efforts of plaintiffs were the undeniably significant ones in determining profit or loss. *See generally Bitter v. Hoby's International, Inc.,* 498 F.2d 183, 184–85 (9th Cir.1974).

 The testimony of Mr. Martin also supports the district court's finding that the failure of T. V. Tempo, Inc. would not necessarily doom plaintiffs' local activity. Because revenues were dependent on local sales activities and production could be obtained from other sources, plaintiffs' enterprise could have survived as an independent entity. *See id.* at 185. The testimony of plaintiffs themselves thus does not square with the test for a security under *Koscot* and *Howey.* In summary, we hold that these franchise agreements were not securities.

Plaintiffs urge that the district court erred in failing to analyze the franchise agreement under the so-called "risk capital" approach. We previously have taken note of this alternative to the *Howey* test but have not embraced it. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d at 482 n.13. In addition, plaintiffs' argument must fail on the facts, for as the evidence shows defendants did not obtain "risk capital" from plaintiffs and, even if they had, the franchise agreements provided no benefit to plaintiffs from application of risk capital to defendants' business.

 Having concluded that the agreements were not securities, the district court dismissed with prejudice not only the federal securities claim but also the state securities claim. We conclude that dismissal of the state claim should have been without prejudice. *Pharo v. Smith,* 621 F.2d 656, 673–675 (5th Cir.1980); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567, at 351 & n.36.1 (1980 Supp.). We modify the judgment of the district court so to hold.

The district court's dismissal with prejudice of the federal securities claim is AF-FIRMED. Its dismissal of the state securities claim is MODIFIED so that such dismissal is without prejudice and as so modified is AFFIRMED. Its judgment in all other respects is AFFIRMED.

MODIFIED in part and AFFIRMED.